[Nos. 47895–3, 48417–1, 48442–2.   En Banc.   September 2, 1982.]

HILLIS HOMES, INC., *Respondent,* v. SNOHOMISH COUNTY, ET AL, *Appellants.*

JACK W. CORY, ET AL, *Respondents,* v. SAN JUAN COUNTY, ET AL, *Appellants.*

*Russ Juckett, Prosecuting Attorney,* and *Julia A. Gibb* and *Susan A. Tanner, Deputies,* for appellant Snohomish County.

*E. H. Knapp, Jr., Prosecuting Attorney, Buck & Gordon, P.S.,* and *Joel M. Gordon,* for appellants San Juan County, et al.

*Edward Heavey,* for respondent Hillis Homes, Inc.

*Carla J. Higginson,* for respondent Cory.

*Diamond & Sylvester,* by *John W. Hempelmann* and *Paul Sikora,* for respondents MacBryer, et al.

PEARSON, J.—Consolidated appeals from Snohomish and San Juan Counties challenge the validity of county ordinances which impose fees on new residential subdivisions and housing proposals. We hold that such fees are taxes and that the Legislature has not granted to the counties authority to impose such taxes. Accordingly, the fees are invalid.

Both Snohomish and San Juan Counties imposed fees on new residential developments in response to financial difficulties precipitated by significant population increases

within the Counties. We will outline the measures taken by each County before considering the facts which gave rise to the appeals before us.

At public hearings in late 1978 and early 1979, residents of Snohomish County voiced concern about the adequacy of county services such as parks, roads, fire protection, police services, and school facilities. New developments in the County and the concomitant population increase had strained existing services, and increased county expenditure was necessary to meet the new demand. In response to these concerns, the County adopted an "Interim Growth Management Policy," which authorized the imposition of fees on new subdivisions for parks, schools, roads, and fire protection. The ordinance adopting this policy was subsequently invalidated on procedural grounds. Thereafter, the County adopted Snohomish County Code Title 26A, which established park service areas and required a payment of $250 per lot for park fees as a condition of plat approval. The fees are required to be used for land acquisition or park development within the park service area in which the subdivision is located. The County adopted an informal procedure whereby it required, as a condition of plat approval, payment of similar fees for school facilities and fire protection. These fees are to be applied to the school and fire districts within which the subdivision is located.

In response to financial pressures caused by rapid residential growth in the County, the San Juan County Commissioners adopted a similar measure. In December 1979, the County adopted resolution 274, which imposes "extended use fees" on all residential land division and housing proposals in the county. Fees are assessed against each lot to pay for the increased demand on solid waste disposal facilities, parks, roads, and sheriff's services, unless adequate capacity exists to service the proposed development. The resolution requires that all fees collected be deposited in special accounts, and use of the fees is restricted to capital improvements which will benefit the geographic area from which the payment is made. The res-

olution provides that the County will not issue permits or accept filings in respect of property until the fees are paid.

The plaintiffs in the consolidated cases before us have been required by the Counties to pay fees pursuant to these measures. Hillis Homes sought to subdivide 9.15 acres located near the Everett city limits into 44 single family lots. The property is within the Mukilteo School District and Snohomish County Fire District 11. As a condition of approval of its proposed plat, Hillis Homes was required to pay a $250 fee per lot for county park purposes and to reach an agreement with the Mukilteo School District and Snohomish County Fire District 11 for the payment of reasonable fees to offset increased costs attributable to the proposed development. Hillis Homes refused to pay the fees and this suit ensued.

Consolidated with the Snohomish County action are two actions from San Juan County. The first arose from an application by two developers, David A. MacBryer and William H. Carlson, for County approval of an 18–lot residential subdivision on Orcas Island. The county commissioners gave preliminary approval to the project. However, the County planning department refused to forward to the county commissioners its report recommending final approval until "expanded use fees" pursuant to resolution 274 were paid.

The developers paid the fees so as to receive final approval of their project and subsequently brought an action challenging the validity of resolution 274.

The second San Juan County action was brought by Jack W. Cory. Cory purchased a piece of land on which he intended to build a new home for his family. He was informed by the San Juan planning department that no building permit or any other type of permit would be issued to him until he paid the expanded use fee claimed by the County under resolution 274. Cory thereupon filed a lawsuit challenging the resolution. He subsequently purchased a second piece of property and was informed that the County would not accept recordation of this property until

the expanded use fee was paid on his earlier purchase. Cory paid $390 in expanded use fees and the second sale was completed.

We hold that, although characterized by the Counties as fees, the payments demanded pursuant to the ordinances before us are taxes, rather than fees. No express grant of authority to impose such taxes has been made by the Legislature. The "fees" imposed upon residential developments in Snohomish and San Juan Counties are therefore without authority and invalid.

The record is replete with evidence of the increased costs imposed on counties by new residential developments. We are sympathetic to the plight of counties faced with the obligation of providing services to a rapidly growing population and hampered by lack of revenue. However, no matter how desperate the needs of the counties, they remain creatures of the constitution and the Legislature. Const. art. 11, § 4. Their powers are limited to those granted them by the constitution and Legislature, expressly or by implication. Our review of the validity of counties' actions must therefore be an inquiry into whether those actions are authorized. If the Legislature has not authorized the action in question, it is invalid no matter how necessary it might be.

Our determination of the validity of the fees must begin, therefore, with consideration of the powers of the counties. The constitution delegates a broad power to each county to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." Const. art. 11, § 11. This court has recognized that these so-called police powers are extensive.

> Municipal police power is as extensive as that of the legislature, so long as the subject matter is local and the regulation does not conflict with general laws. . . . The scope of police power is broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people.

*State v. Seattle,* 94 Wn.2d 162, 165, 615 P.2d 461 (1980).

However, the extensive police power of the counties does not comprehend the power to tax. The constitution provides that "No tax shall be levied except in pursuance of law . . ." Const. art. 7, § 5. This court has clearly stated that "county authorities must have express authority, either under the constitution or an act of the legislature, to levy taxes." *State ex rel. Sch. Dist. 37 v. Clark Cy.*, 177 Wash. 314, 322, 31 P.2d 897 (1934). *Carkonen v. Williams*, 76 Wn.2d 617, 627, 458 P.2d 280 (1969); *Pacific First Fed. Sav. & Loan Ass'n v. Pierce Cy.*, 27 Wn.2d 347, 352, 178 P.2d 351 (1947). Therefore, the counties may not look to their general police powers, or any general grant of authority by the Legislature or constitution for a power to impose taxes. The counties' power to tax must be granted expressly.

We turn now to consider whether the fees should be correctly characterized as taxes. Taxes are imposed to supply revenue for the public treasury. *State ex rel. Nettleton v. Case,* 39 Wash. 177, 182, 81 P. 554 (1905). Not all demands for payment made by a governmental body are taxes. We have pointed out that "if the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed." *Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 461, 553 P.2d 1316 (1976). The characterization of the development fees will, therefore, turn on a determination of the primary purpose of the fees. If the fees are merely tools in the regulation of land subdivision, they are not taxes. If, on the other hand, the primary purpose of the fees is to raise money, the fees are not regulatory, but fiscal, and they are taxes.

The Oregon Supreme Court, in a case very similar to the one before us, expressed the test as "whether the primary purpose of the county is to accomplish desired public benefits which cost money, or whether the primary purpose is to regulate future subdivisions." *Haugen v. Gleason,* 226 Or. 99, 104, 359 P.2d 108 (1961). Having stated the test in this way, the Oregon court had no difficulty in deciding that the

fees were intended to raise money rather than regulate subdivisions. We agree.

There can be no question that both the Snohomish and San Juan County ordinances are intended to raise money rather than regulate residential developments. The terms of both ordinances clearly provide that the fees are to be applied to offset the costs of providing specified services. Neither ordinance makes any provision for regulation of residential developments. Therefore, it appears that the primary purpose, if not the only purpose of both ordinances, is to raise revenue rather than to regulate residential developments. For this reason, we hold that the ordinances impose a tax.

The Legislature has not authorized the counties to impose such a tax. The only statute to which the Counties direct us is RCW 58.17.110, which states in pertinent part:

> The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine if appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and schoolgrounds, and shall consider all other relevant facts and determine whether the public interest will be served by the subdivision and dedication. If it finds that the proposed plat makes appropriate provisions for the [items listed above] and that the public use and interest will be served by the platting of such subdivision, then it shall be approved.
> . . . Dedication of land to any public body may be required as a condition of subdivision approval . . . The legislative body shall not as a condition to the approval of any plat require a release from damages to be procured from other property owners.

This statute contains no express authority for the counties to impose taxes as a condition of subdivision approval. At most, the statute allows counties to condition subdivision approval on the availability of public facilities such as streets, parks, and sites for schools. The statute does not

authorize the imposition of taxes to provide funds for such services.

Therefore, the Counties are without express authority to impose taxes in the form of development fees and the ordinances imposing such fees are invalid.

■ Plaintiffs in the action against San Juan County paid the expanded use fees before challenging resolution 274. They are entitled to a refund of those fees, even though the fees were not paid under protest. Payment of the fees was compelled by the County's refusal to process plaintiffs' permits and was therefore involuntary. *Great N. R.R. v. State*, 200 Wash. 392, 420–24, 93 P.2d 694 (1939). Plaintiffs are entitled to recover the fees paid under the invalid ordinances.

BRACHTENBACH, C.J., ROSELLINI, STAFFORD, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., and WIELAND, J. Pro Tem., concur.