49 P.3d 860 (2002)
146 Wash.2d 685
The BENCHMARK LAND COMPANY, an Oregon limited liability company, Respondent,
v.
CITY OF BATTLE GROUND, Washington, a municipal corporation of the State of Washington, Petitioner.
No. 70659-0.
Supreme Court of Washington, En Banc.
July 11, 2002.
*861 William D. Kamerrer, Olympia, for Petitioner.
Leanne M. Bremer, Vancouver, Ronald Franz, Seattle, for Respondent.
Bob Sterbank, Federal Way, amicus curiae on behalf of Wash. Ass'n of Wash. Attys.
Brent Boger, Vancouver, Timothy Harris, Robin Rivett, Russell Brooks, Bellevue, amicus curiae on behalf of Pacific Legal Foundation.
Greg Overstreet, Olympia, John Groen, Bellevue, Jodi Slavik, Olympia, amicus curiae on behalf on Building Industry Ass'n of Wash.
Pamela Loginsky, Olympia, amicus curiae on behalf of Wash. Ass'n of Prosecuting Attys.
Douglas Kendall, Washington, DC, Christine Gregoire, Atty. Gen., Roger Wynne, Asst. Atty. Gen., Seattle, amicus curiae on behalf of Ass'n of Wash. Cities.
IRELAND, J.
The City of Battle Ground sought review of the Court of Appeals' decision that the City unconstitutionally took property belonging to Benchmark Land Company by requiring Benchmark to make improvements to an existing street bordering its proposed subdivision as a condition to approving its plat application.
Finding that the City's condition for subdivision approval does not satisfy the substantial evidence standard of chapter 36.70C RCW, we hold that the City's condition is invalid as applied to Benchmark. Given the holding, it is unnecessary to reach the constitutional issue.

FACTS
In November 1994, Benchmark Land Company filed a preliminary plat application with the City of Battle Ground for a subdivision known as Melrose Park. Benchmark sought to develop a 20.25-acre site in the city into 56 single-family, residential lots.
Melrose Park is bordered on the east by North Parkway Avenue and on the south by Onsdorff Boulevard. Benchmark initially proposed to make improvements to both North Parkway and Onsdorff, and its original plat map included entrances to Melrose Park from both streets.
However, before the planning commission considered Benchmark's application, the city engineer suggested that the outlet to North Parkway be eliminated. Benchmark reconfigured its plat map accordingly, but did not remove the proposed improvements to North Parkway from the revised map.
*862 The planning commission considered the proposed plat of Melrose Park in March and April 1995. At its April meeting, the commission voted to recommend approval to the city council. When the city council considered the matter on May 15, 1995, the council voted to approve the preliminary plat. Neither the planning commission nor the city council entered written findings reflecting its decision.
Following the city council's approval, Benchmark began development activities, including work on the street improvements to North Parkway. However, Benchmark discovered that the improvements would be more costly than anticipated. In August 1995, Benchmark rescinded its offer to make the improvements.
Nonetheless, in January 1996, the city council adopted written findings of fact on its previous decision, approving the Melrose Park subdivision subject to "construction of Parkway Avenue and Onsdorff Boulevard, including half-width improvements as proposed by the applicant [Benchmark]." Clerk's Papers (CP) at 178. Thus, the City required Benchmark to improve North Parkway, which borders but has no direct access to Melrose Park.
The City maintains the improvements are required by ordinance.[1] At issue is a code provision requiring proposed subdivisions, as a condition of plat approval, to construct half-width road improvements "to that portion of an access street which abuts the parcel being developed." Former Battle Ground Municipal Code (BGMC) 12.16.180. "Access road" is defined as "a public street providing vehicular access to the boundary of a parcel of real property being proposed for development." Former BGMC 12.16.020(A).

PROCEDURAL HISTORY
Benchmark brought an action in superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging the City's condition of plat approval that required Benchmark to make improvements to North Parkway.
The superior court remanded the matter to the City "for consideration of whether the traffic impacts of the proposed preliminary plat of Melrose Park support a requirement of half street improvements to North Parkway Avenue." CP at 377-78.
On remand, both the City and Benchmark conducted traffic studies, which were presented to the planning commission. The results of the traffic studies are summarized below.
The City hired Lancaster Engineering to study traffic impacts of the proposed subdivision. Lancaster's report noted that North Parkway has one travel lane in each direction "with no curbs, paved shoulders, sidewalks, or bike paths." CP at 488. The report found that "with the addition of site trips from the Melrose Park Subdivision, there will be adequate capacity at the intersection of Parkway and Onsdorff." CP at 499. Lancaster found that the existing street was substandard "Parkway Avenue does not meet current safety and efficiency standards for width and lane configuration as specified by the Battle Ground Transportation Plan." Id. Lancaster concluded as follows: "Improving the roadway to meet current standards would mitigate the deficiency that would result from additional vehicular, bicycle, and pedestrian traffic due to the subdivision." Id. (emphasis added).
Benchmark hired The TRANSPO Group, Inc. to study the traffic impacts caused by Melrose Park. In examining the existing streets in the vicinity of the subdivision, TRANSPO noted that "[t]he 700-foot section of NE 132nd Avenue [North Parkway] which borders the site is consistent with other sections of NE 132nd Avenue from Main Street to NE 142nd Avenue." CP at 505. TRANSPO's analysis determined that the traffic volume increase on North Parkway due to the proposed development would be approximately 1.4 percent. TRANSPO concluded as follows: "An increase of this magnitude *863 would be virtually indistinguishable to the average motorist and has no [e]ffect on overall intersection and roadway level of service." CP at 511. TRANSPO also stated that the project would have "little to no impact on safety and operations" on North Parkway. Id. TRANSPO did not find off-site improvements to be necessary as a result of Melrose Park.
Nonetheless, the commission determined that the development's impacts on North Parkway justified requiring Benchmark to make the street improvements. The city council agreed at its February 1997 open meeting, and the council issued the following written decision:
1. The City of Battle Ground shall not require additional dedication of land from the applicant to widen North Parkway Avenue north of Onsdorff Boulevard.[[2]]
2. Taking into consideration all of the impacts on North Parkway, the respective conclusions of the two traffic engineers and the facts submitted to the Planning Commission and reflected in the record and in the Findings of Fact of the Planning Commission, and further noted by the members of the City Council, it is reasonable and proportional to require the applicant to make standard half-street improvements to North Parkway Avenue only as it fronts Melrose Park Subdivision, consisting of pavement, curbs, gutter, bike lane, sidewalk, and stormwater drainage facility, together with associated striping and signage.
CP at 582 (emphasis added).
Benchmark again pursued judicial review and sought damages under federal and state law. Pursuant to CR 54(b), the court allowed Benchmark to proceed with its damages claims, but entered final judgment on its LUPA claim. In its order following remand, the court ordered, adjudged, and decreed as follows:
[T]hat the City has not brought forth substantial evidence of an "essential nexus" between possible impacts which may be caused by the Melrose Park Subdivision and half-street improvements to North Parkway Avenue; and ...
[T]hat the City has not brought forth substantial evidence of "rough proportionality" between possible impacts which may be caused by the Melrose Park Subdivision and half-street improvements to North Parkway Avenue; and ...
[T]hat the City's decision of February 6, 1997 that Benchmark be required to, inter alia, construct half-street improvements to North Parkway Avenue as a condition of approval of the Melrose Park Subdivision is not supported by substantial evidence.
CP at 655-56. The City appealed.
The Court of Appeals applied a Nollan/Dolan analysis[3] "where the City requires the developer as a condition of approval to incur substantial costs improving an adjoining street." Benchmark Land Co. v. City of Battle Ground, 94 Wash.App. 537, 548, 972 P.2d 944 (1999). The court held that the City failed to show "an impact and a solution roughly proportional to the impact." Id. at 552, 972 P.2d 944. Accordingly, the court affirmed the superior court's ruling that the condition was invalid.
This Court at 138 Wash.2d 1008, 989 P.2d 1140 (1999) granted the City's petition for review and remanded to the Court of Appeals for reconsideration in light of City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). On remand, the Court of Appeals adhered to its original decision, stating as follows:

*864 Although Del Monte Dunes defines "exactions" as "decisions conditioning approval of development on the dedication of property," ... we emphasize the similarity of exacting land and money. If the government in Nollan and Dolan had exacted money rather than land and then purchased land to solve the problems, the same questions would arise: was the money exacted for and used to solve a problem connected to the proposed development? (Nollan.) And was the amount of money exacted roughly proportional to the development's impact on the problem? (Dolan.) Surely if the issues for an exaction of money are the same as for an exaction of land, the test must be the same: a showing of "nexus" and "proportionality."
Benchmark, 103 Wash.App. at 727, 14 P.3d 172.
The City filed its second petition for review one day late. This Court granted its motion for extension of time to file the petition and accepted review at 143 Wash.2d 1018 (2001).
Amici curiae memoranda in support of the City were submitted by the Association of Washington Cities and the Washington State Association of Municipal Attorneys (jointly) and the Washington Association of Prosecuting Attorneys. Amici curiae memoranda in support of Benchmark were submitted by the Building Industry of Washington and Pacific Legal Foundation.

ANALYSIS
Standard of Review
Judicial review of land use decisions is governed by the LUPA, chapter 36.70C RCW. Girton v. City of Seattle, 97 Wash.App. 360, 362, 983 P.2d 1135 (1999). "By petitioning under LUPA, a party seeks judicial review by asking the superior court to exercise appellate jurisdiction." Sunderland Family Treatment Servs. v. City of Pasco, 107 Wash.App. 109, 117, 26 P.3d 955 (2001). When reviewing the underlying administrative decision, this Court "stands in the same position as the superior court." Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000).
RCW 36.70C.130
Under RCW 36.70C.130, an appellate court may grant relief from a land use decision if the petitioner carries its burden of establishing at least one of the following six standards:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1).
The City asserts errors by the Court of Appeals as to subsections (c) and (f). However, it is a fundamental principle that this Court will not reach a constitutional issue if it can decide a case on other than constitutional grounds. Senear v. Daily Journal-Am., 97 Wash.2d 148, 152, 641 P.2d 1180 (1982). The instant case can be fully resolved under subsection (c) of the statute. Therefore, we do not reach the constitutional issue under subsection (f).
Substantial Evidence
Issues raised under subsection (e) challenge the sufficiency of the evidence. "[S]ubstantial evidence is `a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 *865 Wash.2d 38, 46, 959 P.2d 1091 (1998) (quoting Callecod v. Wash. State Patrol, 84 Wash.App. 663, 673, 929 P.2d 510 (1997)).
"We view inferences in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority." Schofield v. Spokane County, 96 Wash. App. 581, 588, 980 P.2d 277 (1999). In this case, we view the record and inferences in a light most favorable to the City because the City prevailed before the city council.
As a condition of development approval, the City required Benchmark to incur the costs of improving streets bordering Melrose Park. The City argues that its requirement is supported by substantial evidence. We disagree.
North Parkway did not meet City roadway standards even before the development was proposed. The required expenditure for street improvements was not directly related to the traffic generated by the development. See Miller v. City of Port Angeles, 38 Wash. App. 904, 910, 691 P.2d 229 (1984). Rather, the required improvements would relieve a preexisting deficiency.
In addition, the traffic studies found that the subdivision would have little to no impact on safety and operations on the section of roadway Benchmark was required to improve.
In its traffic report, Lancaster stated that Melrose Park "will probably not result in the generation of any school walking or biking trips on Parkway north of Onsdorff because the schools are located to the south and west of the subdivision." CP at 498.
TRANSPO's traffic impact analysis notes that "[n]ew developments along NE 132nd Avenue [Parkway Avenue] have not been provided with direct driveway access to the roadway. Thus no improvements have been implemented along this section of roadway from Main Street to NE 142nd Avenue to accommodate these developments." CP at 505. "The section of site frontage along NE 132nd Avenue is not inconsistent with other sections of NE 132nd Avenue or other area roadways." CP at 511.
The increase in traffic volumes on North Parkway due to Melrose Park "are far less than the typical day to day fluctuation of traffic and would be virtually indistinguishable to the average driver in the area." CP at 507.
"There is no information indicating that there are any unusual safety conditions near the proposed project site that would contribute to accident occurrence." CP at 510.
TRANSPO concluded that the intersection of Onsdorff and Parkway is "operating at acceptable levels of service and will continue to do so with development of the proposed project." CP at 511.

SUMMARY
Based on the record before us, we determine that there is not substantial evidence, as required by RCW 36.70C.130(1)(c), to support the City's decision to require Benchmark to make improvements to North Parkway as a condition of development approval. Having found that the issue can be resolved on a nonconstitutional basis, we affirm the Court of Appeals' decision on alternate grounds and affirm the superior court's ruling that the City's condition is invalid under the statute.
ALEXANDER, C.J., SMITH, MADSEN, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
JOHNSON, J., concurs in result only.
SANDERS, J. (concurring).
I agree with the majority that conditioning plat approval on offsite road improvements under these circumstances is unlawful. However, I write separately to articulate why I think that is the correct result.
The majority rests its conclusion on the claim that conditioning plat approval on offsite road improvements is not supported by substantial evidence, a ground recognized for reversal under RCW 36.70C.130(1)(c), the Land Use Petition Act. The trial court articulated the evidentiary deficiency as the failure of the municipality to proffer substantial evidence of an "essential nexus" between the possible impacts which may be caused by the *866 subdivision and the half-street improvements to North Parkway Avenue, as well as the failure to demonstrate a "rough proportionality" between the impacts and the exaction. Majority at 863.1 agree this is the evidentiary deficiency.
However, I think it is also important to note exactly why it is the legal burden of the city to prove this. The Court of Appeals opinion in this proceeding articulated the view that the requirement stems from the Fifth Amendment to the United States Constitution as construed in Nollan v. California Coastal Commission, 483 U.S. 825, 834, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) and Dolan v. City of Tigard, 512 U.S. 374, 386, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).[1] Although the majority opinion does not find it necessary to reach the constitutional issue, choosing instead to dispose of the case on narrower state law grounds, I think it might be helpful to more precisely articulate exactly what those narrower state law grounds are.
Specifically, I think RCW 82.02.020 imposes that requirement.
In relevant part this statute provides: [N]o county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, ... on the development, subdivision, classification, or reclassification of land ....
This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat ....
. . . .
No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is reasonably necessary as a direct result of the proposed development or plat.
RCW 82.02.020 (emphasis added).
The threshold question under this statute is therefore whether the required construction of offsite street improvements is a "tax, fee, or charge, either direct or indirect." We have previously recognized that a tax may be in cash or "kind." San Telmo Assocs. v. City of Seattle, 108 Wash.2d 20, 24, 735 P.2d 673 (1987). And of course the prohibition in RCW 82.02.020 includes but is broader than taxes because "whether a payment is characterized as a tax or a regulatory fee," it is prohibited unless specifically excepted. R/L Assocs., Inc. v. City of Seattle, 113 Wash.2d 402, 409, 780 P.2d 838 (1989). Considering the somewhat narrower question of whether plat approval conditioned on the payment of fees for road improvements were properly considered taxes, we expressed the view in Hillis Homes, Inc. v. Snohomish County, 97 Wash.2d 804, 808, 650 P.2d 193 (1982) that they were. We there cited with approval the Oregon case of Haugen v. Gleason, 226 Or. 99, 104, 359 P.2d 108 (1961) which characterized a tax as an imposition imposed "to accomplish desired public benefits which cost money."
With these principles in mind RCW 82.02.020 exempts from its otherwise broad prohibition against "any tax, fee, or charge, either direct or indirect, .... on the development, subdivision, classification, or reclassification of land" required payments which are "reasonably necessary as a direct result of the proposed development or plat." RCW 82.02.020. This is a statutory requirement to establish a nexus between the development and the problem as well as a limitation that the developer's required contribution to the solution of the problem be proportionate to his contribution to the problem itself.
Of course this deficiency cannot be cured by a local ordinance which imposes a tax, fee, or charge without statutory authorization or otherwise conflicts with the general laws of the state, i.e., RCW 82.02.020.
Therefore even if former Battle Ground Municipal Code 12.16.180 authorized the subject condition it would be invalidly applied to the extent its application violated RCW *867 82.02.020 or imposed a statutorily unauthorized tax. This ordinance does not require that result, however. Although subsection A of the ordinance purports to require a "half-width road improvement shall be constructed to the applicable standards set out in this chapter to that portion of an access street which abuts the parcel being developed, as a requirement of approval of a final plat or final short plat," subsection C of the same ordinance expressly provides "that the developer may voluntarily agree to mitigate such direct impacts in accordance with the provisions of RCW 82.02.020." This seems to be a round-about recognition that such mitigation is not required under the ordinance absent proof that it is necessary to mitigate a "direct impact" of the development. Of course proof that these offsite road improvements are necessary because of the "direct impact" of the plat is simply absent.
For these reasons I concur in the majority's result.
NOTES
[1] The initial section of former chapter 12.16 of the Battle Ground Municipal Code states as follows: "It is the purpose of this chapter to establish minimum standards for public and private streets hereinafter constructed or improved by another as a condition of city approval of a development or by the city." Former Battle Ground Municipal Code 12.16.010.
[2] Benchmark's argument that the City required the developer to dedicate land in order to make street improvements is without merit. A 30-foot right-of-way over the half of North Parkway bordering Melrose Park existed before Benchmark applied for plat approval. Although Benchmark initially proposed to dedicate an additional five feet of right-of-way in order to make the half-width improvements, the city council expressly determined that Benchmark was not required to dedicate any land beyond the preexisting right-of-way to make such improvements.
[3] The court analyzed the regulatory takings claim under the "essential nexus" standard announced in Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) and the "rough proportionality" standard set forth in Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).
[1] The Court of Appeals opinion on the constitutional issue has merited scholarly praise from Professor William Stoebuck. See 17 William B. Stoebuck, Washington Practice, Real Estate: Property Law § 5.5, at 25 (Supp.2001).