108

[No. 52094-6-I.   Division One.   April 5, 2004.]

MONTE R. LITTLETON, ET AL., *Appellants*, v. WHATCOM COUNTY, ET AL., *Respondents*.

*Kurt A. Denke*, for appellants.

*David S. McEachran, Prosecuting Attorney*, and *Randall J. Watts, Deputy*, for respondent.

AGID, J. — Monte R. Littleton appeals the trial court's order dismissing his case on summary judgment. Littleton brought this declaratory judgment action to determine whether he must obtain a solid waste handling permit to operate a worm farm. Worm farms use chicken manure in one phase of their operations. The trial court found that chicken manure is a solid waste, requiring Littleton to

obtain a solid waste handling permit. But because the legislature removed the word "manure" from its definition of "solid waste," chicken manure as used on a worm farm is not solid waste and the Department of Ecology regulation to the contrary is invalid. We reverse the trial court's summary judgment order.

## FACTS

Monte Littleton wanted to open a worm farm in Whatcom County. To do so, Littleton had to make worm food by composting wheat straw, chicken manure, water, lime, soy meal, and gypsum. Wheat straw makes up approximately 90 percent of this mixture. The mixture is composted and generates 600-1,000 yards of material each week. After three weeks, the composted material is transferred to a mushroom farm where it is used to grow mushrooms. Ten weeks later, the compost is returned to the worm farm, mixed with wood fiber and sand, and aged for four weeks. The resulting mixture results in "ideal worm food."

Before he started his worm farm, Littleton sought Whatcom County's approval. After the county's land use division manager informed Littleton that his proposed farm did not violate any zoning laws, Littleton spent approximately $650,000 on land and construction. Approximately one year later, Whatcom County Health and Human Services informed Littleton that he would need a solid waste handling permit because chicken manure is a solid waste under state regulations. Littleton then brought this action for declaratory judgment.

Littleton moved for summary judgment. The court denied the motion, finding "as a matter of law that chicken manure was a putrescible solid waste controlled under RCW 70.95 and that the plaintiff was required to apply to Whatcom County for a solid waste handling permit." Although the County did not file a cross-motion for summary judgment, both parties agreed that there was no genuine issue of fact. The court ordered summary judgment for the County and dismissed the case.

## DISCUSSION

I. Chapter 70.95 RCW and Department of Ecology (DOE) Regulations

Under chapter 70.95 RCW, Washington's solid waste management statute, one may not maintain, establish, or modify a solid waste handling facility without a permit.[1] It is also unlawful for any person to dump or deposit any solid waste onto or under the ground or in the water except at a solid waste disposal site possessing a valid permit.[2] "Solid waste" is "all putrescible[3] and nonputrescible solid and semisolid wastes including, but not limited to, garbage, rubbish, ashes, industrial wastes, swill, sewage sludge, demolition and construction wastes, abandoned vehicles or parts thereof, and recyclable materials."[4] "Solid waste handling" is "the management, storage, collection, transportation, treatment, utilization, processing, and final disposal of solid wastes, including the recovery and recycling of materials from solid wastes, the recovery of energy resources from solid wastes or the conversion of the energy in solid wastes to more useful forms or combinations thereof."[5]

A solid waste dumping violation constitutes a misdemeanor if the litter is greater than one cubic foot but less than one cubic yard, and it constitutes a gross misdemeanor if the amount is one cubic yard or more.[6] In enacting this statute, the legislature recognized increased problems in the "disposal of garbage, refuse, and solid waste materials resulting from domestic, agricultural, and industrial activi-

---

[1] RCW 70.95.170.

[2] RCW 70.95.240(1).

[3] Waste is "putrescible" if it contains organic matter capable of being decomposed by bacteria and fungi. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1850 (1993); WAC 173-304-100(63).

[4] RCW 70.95.030(22).

[5] RCW 70.95.030(23).

[6] RCW 70.95.240(2).

ties."[7] It further noted that the improper handling and disposal of solid waste damages the environment and that solid waste recovery and recycling programs are necessary in light of "natural resource limitations, energy shortages, economics and the environment."[8]

The DOE has regulatory authority under chapter 70.95 RCW. In its regulations, the DOE defines "agricultural waste" as farm waste resulting from agricultural product production "including but not limited to *manures*, and carcasses of dead animals weighing each or collectively in excess of fifteen pounds."[9] DOE then adopts the legislature's definition of "solid waste," but adds that "[t]his includes all liquid, solid and semisolid, materials which are not the primary products of public, private, industrial, commercial, mining, and *agricultural* operations."[10]

Relying on the DOE's definition, Whatcom County and the trial court interpreted chicken manure as being solid waste, thus requiring Littleton to obtain a permit. Littleton argues that, despite the DOE regulations, agricultural manures used for agricultural purposes are not solid waste under chapter 70.95 RCW.

## II. Interpreting Chapter 70.95 RCW

■■ The interpretation of a statute and its implementing regulations is a question of law that we review de novo.[11] Our goal is to effectuate the legislature's intent and purpose as it is expressed in the act.[12] In ascertaining legislative intent we must look to the statutory scheme as a

---

[7] RCW 70.95.010(1).

[8] RCW 70.95.010(3).

[9] WAC 173-304-100(2) (emphasis added).

[10] WAC 173-304-100(73) (emphasis added).

[11] *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 154, 60 P.3d 53 (2002) (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983)).

[12] *State v. Grays Harbor County*, 98 Wn.2d 606, 607, 656 P.2d 1084 (1983) (citing *In re Pers. Restraint of Lehman*, 93 Wn.2d 25, 27, 604 P.2d 948 (1980)).

whole.[13] When interpreting a statute, we must first determine whether its language is ambiguous; that is, whether it is capable of more than one reasonable interpretation.[14] If the language is plain and unambiguous, we ascertain the statute's meaning from the statute itself.[15] But if it is ambiguous or unclear, we may look to legislative history to discern legislative intent.[16]

Littleton argues that the word "waste" in the "solid waste" definition implies that the material is useless and intended for disposal. Therefore, agricultural manures used in agricultural operations are not "waste" because they are still intended for use. The dictionary defines "waste" as a "damaged, defective, or superfluous material . . . material not usable for the ordinary or main purpose of manufacture . . . SCRAP . . . worthless material removed in mining or digging operations . . . refuse from places of human or animal habitation . . . GARBAGE, RUBBISH . . . EXCREMENT . . . SEWAGE."[17] This definition of "waste" means that it is, as Littleton argues, something superfluous and incapable of reuse. DOE's regulations state that agricultural manures constitute waste, presumably in spite of its ability to be reused. "Waste" is therefore capable of more than one reasonable interpretation, and we turn to legislative history to resolve the issue.

---

[13] *Auto. Drivers & Demonstrators Union Local No. 882 v. Dep't of Ret. Sys.*, 92 Wn.2d 415, 420, 598 P.2d 379 (1979) (citing *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975)), *appeal dismissed, cert. denied,* 444 U.S. 1040 (1980).

[14] *Edelman v. State ex. rel. Pub. Disclosure Comm'n*, 116 Wn. App. 876, 882-83, 68 P.3d 296 (2003) (citing *Vashon Island Comm. for Self-Gov't v. State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995)), *review granted,* 150 Wn.2d 1025 (2004).

[15] *Grays Harbor County,* 98 Wn.2d at 607 (citing *Lehman,* 93 Wn.2d at 27; *Garrison v. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976)).

[16] *Id.* at 607-08 (citing *Whitehead v. Dep't of Soc. & Health Servs.*, 92 Wn.2d 265, 268, 595 P.2d 926 (1979); *Ropo, Inc. v. City of Seattle*, 67 Wn.2d 574, 577, 409 P.2d 148 (1965); *Garrison*, 87 Wn.2d at 196).

[17] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2580 (1993).

The Washington legislature enacted the solid waste management statute in 1969.[18] At that time, the statute defined "solid waste" as

all putrescible and nonputrescible solid and semisolid wastes including garbage, rubbish, ashes, industrial wastes, demolition and construction wastes, abandoned vehicles or parts thereof, discarded home and industrial appliances, *manure, vegetable or animal solid and semisolid wastes*, and other discarded materials.[19]

But in 1970, the legislature changed the definition by striking "home and industrial appliances, *manure, vegetable or animal solid and semisolid wastes*, and other discarded materials" and adding "commodities" in its place.[20] Because the legislature removed "manure" from its list of solid wastes, we presume that it did not want manure to be so classified.[21] Whatcom County argues that the legislature removed "manure" from the statutory definition only in order to remove redundancy. But this argument is without merit, as the statute contains no term with which "manure" is redundant.

■■ Accordingly, we interpret the statutory definition of "solid waste" to exclude agricultural manures used for agricultural purposes. This interpretation complies with our duty to avoid any "absurd or strained consequences" while interpreting a statute.[22] As Littleton points out, if chicken manure used for agricultural processes is solid waste requiring a solid waste handling permit, farmers

---

[18] Laws of 1969, 1st Ex. Sess., ch. 134.

[19] *Id.* at § 3(9) (emphasis added).

[20] Laws of 1970, 2d Ex. Sess., ch. 62, § 60(9) (emphasis added).

[21] *Auto. Drivers*, 92 Wn.2d at 421 (citing *Jepson v. Dep't of Labor & Indus.*, 89 Wn.2d 394, 573 P.2d 10 (1977)) (a court cannot read into a statute that which it believes the legislature has omitted); *In re Phillips' Estate*, 193 Wash. 194, 201-02, 74 P.2d 1015 (1938) (repealed and superseded statutes are useful in statutory construction, and a court may presume a change in legislative purpose from a material change in a statute's wording).

[22] *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987) (citing *State v. Richardson*, 81 Wn.2d 111, 499 P.2d 1264 (1972)).

across the state who currently use manure as fertilizer are criminally liable for operating without a permit. The legislature could not have intended this consequence.

But the County argues that chapter 70.95 RCW's reference to "waste-derived soil amendments" eliminates this unintended consequence. A "waste-derived soil amendment" is any substance derived from solid waste that is intended to improve the soil's physical characteristics.[23] It does not include "composted material, commercial fertilizers, agricultural liming agents, unmanipulated animal manures, unmanipulated vegetable manures, food wastes, food processing wastes, and materials exempted by rule of the department, such as biosolids . . . and wastewater."[24] By statute, one who uses a DOE-approved waste-derived soil amendment is exempt from the criminal penalties associated with dumping solid waste without a permit.[25] The statute also authorizes DOE to exempt waste-derived soil amendment users from the permit requirements altogether.[26] Therefore, according to the County, even if agricultural manure used for agricultural purposes constitutes solid waste, those who use it for soil amendment purposes are released from statutory liability. But the definition of soil amendments excludes many materials that a farmer may use, such as compost, commercial fertilizers,[27] and unmanipulated animal manures.[28] Thus this portion of the statute does not necessarily avoid the unintended conse-

---

[23] RCW 70.95.030(21), (26).

[24] RCW 70.95.030(21).

[25] RCW 70.95.240(1)(b).

[26] RCW 70.95.205(1).

[27] Chapter 15.54 RCW defines "commercial fertilizer" as "a substance containing one or more recognized plant nutrients and that is used for its plant nutrient content or that is designated for use or claimed to have value in promoting plant growth, and shall include limes, gypsum, and manipulated animal and vegetable manures. It does not include unmanipulated animal and vegetable manures, organic waste-derived material, and other products exempted by the department by rule." RCW 15.54.270(4).

[28] "Manipulation" means "processed or treated in any manner, including drying to a moisture content less than thirty percent." RCW 15.54.270(19).

quence of requiring farmers to obtain a permit and/or making them criminally liable for ordinary farming practices.

The County adds that WAC 173-304-015(5) also eliminates unintended consequences. This rule states that "[t]hese regulations shall not apply" to certain solid wastes, including "[a]gricultural wastes, limited to manures and crop residues, returned to the soils at agronomic rates . . . ."[29] But this regulation does not eliminate unintended consequences; it exempts only the use of certain manures from "these regulations." It does not exempt manure use from chapter 70.95 RCW's criminalizing statute.

The County next argues that chapter 70.95 RCW clearly anticipates that DOE will regulate manure because a statement in the legislative findings refers to "new and ever-mounting problems involving disposal of garbage, refuse, and solid waste materials resulting from . . . *agricultural* . . . activities."[30] But this statement refers only to the *disposal* of agricultural garbage, refuse, and solid waste; it does not refer to its reuse. The legislative findings do nothing to bolster the County's argument that manure constitutes solid waste.

Next, the County asserts that the statutory definition of "composted material" is proof that the legislature intended to regulate agricultural manure. The statute defines "composted material" as "organic solid waste that has been subjected to controlled aerobic degradation at a solid waste facility."[31] This definition does not include manure, so it does nothing to support the County's argument.

Finally, the County argues that although manure is not specifically mentioned in the statutory definition of solid waste, it nevertheless qualifies because solid waste is "all putrescible and nonputrescible solid and semisolid

[29] WAC 173-304-015(5).

[30] RCW 70.95.010(1) (emphasis added).

[31] RCW 70.95.030(4).

wastes . . . ."[32] But this argument again overlooks the fact that manure, as a *reusable* substance, does not constitute *waste*.

### III. Validity of DOE Regulations

■ Our holding that chicken manure is not a solid waste contradicts DOE's regulations on the subject. Littleton argues that these regulations are invalid because they exceed DOE's statutory authority.[33] The validity of an administrative rule is a question of law that we review de novo,[34] and one who attacks the validity of a rule must show compelling reasons why the rule conflicts with the legislature's intent and purpose.[35] Because the legislature granted rule-making authority to DOE, we must presume that the regulation is valid and we will uphold it if it is reasonably consistent with the statute.[36] But a regulation may not modify or amend a statute,[37] and if an enabling statute does not authorize a particular regulation, we must declare the regulation invalid.[38]

■ Here, the regulations define "solid waste" to include agricultural manures.[39] And while chapter 70.95 RCW authorizes DOE to adopt rules in the areas of solid waste

---

[32] RCW 70.95.030(22).

[33] *H&H P'ship v. State*, 115 Wn. App. 164, 167, 62 P.3d 510 (2003) (citing RCW 34.05.570(2)(c)) (a regulation is invalid if it exceeds the agency's statutory authority).

[34] *Id.* at 168 (citing *State v. Ford*, 110 Wn.2d 827, 831, 755 P.2d 806 (1988)).

[35] *Id.* (citing *Green River Cmty. Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *modified on reh'g*, 95 Wn.2d 962, 633 P.2d 1324 (1981); RCW 34.05.570(1)(a)).

[36] *Id.* (citing *Brannan v. Dep't of Labor & Indus.*, 104 Wn.2d 55, 60, 700 P.2d 1139 (1985); *Superior Asphalt & Concrete v. Dep't of Labor & Indus.*, 84 Wn. App. 401, 405, 929 P.2d 1120 (1996), *review denied*, 132 Wn.2d 1009 (1997)).

[37] *Id.* at 170 (citing *Bird-Johnson Corp. v. Dana Corp.*, 119 Wn.2d 423, 428, 833 P.2d 375 (1992)).

[38] *Wash. Indep. Tel. Ass'n v. Telecomm. Ratepayers Ass'n for Cost-Based & Equitable Rates*, 75 Wn. App. 356, 363, 880 P.2d 50 (1994) (citing *In re Registration of Elec. Lightwave, Inc.*, 123 Wn.2d 530, 536-40, 869 P.2d 1045 (1994); *Hillis Homes, Inc. v. Snohomish County*, 97 Wn.2d 804, 808, 650 P.2d 193 (1982)).

[39] WAC 173-304-100(2), (73).

handling standards,[40] reserve accounts for landfill disposal facilities,[41] facilities for waste generated outside Washington,[42] sewage and septic tank sludge,[43] solid waste collection programs,[44] deference among jurisdictions,[45] and vehicle battery disposal,[46] the statute nowhere permits DOE to amend or alter the statutory definitions of applicable terms. And, while the statute permits DOE to *exempt* certain solid wastes from permit requirements under certain circumstances,[47] this does not authorize the DOE to include agricultural manures used for agricultural purposes in the definition of solid waste. This is especially so in light of the legislature's decision to remove the term "manure" from the statute's coverage one year after it was adopted.

We reverse.

COLEMAN and BAKER, JJ., concur.

---

[40] RCW 70.95.060(1).

[41] RCW 70.95.215(2).

[42] RCW 70.95.218(4).

[43] RCW 70.95.255.

[44] RCW 70.95.280.

[45] RCW 70.95.310.

[46] RCW 70.95.670.

[47] RCW 70.95.300(2) (allowing applications for solid waste exemptions); RCW 70.95.300(1) (allowing exemption of solid wastes if the material will be beneficially used or reused without health or environmental risks); RCW 70.95.205 (allowing exemption of solid wastes if the material is a waste-derived soil amendment meeting certain standards); RCW 70.95.305 (allowing exemption of certain solid waste handling facilities that satisfy environmental standards).