No. 99–697. LAMBERT ET UX. v. CITY AND COUNTY OF SAN FRANCISCO ET AL. Ct. App. Cal., 1st App. Dist. Certiorari denied.

JUSTICE SCALIA, with whom JUSTICE KENNEDY and JUSTICE THOMAS join, dissenting.

Petitioners Claude and Micheline Lambert own the Cornell Hotel in San Francisco. The hotel has 24 residential units and 34 tourist units. After experiencing difficulty renting the hotel's residential units, petitioners applied to the San Francisco Planning Commission for a conditional use permit to convert those units to tourist use.* That request implicated two bodies of San Francisco's land-use law: the Planning Code and the Residential Hotel Unit Conversion and Demolition Ordinance (HCO). The Planning Code provides that a tourist hotel may not be "significantly altered, enlarged, or intensified, except upon approval of a new conditional use application." S. F. Planning Code, Art. 1.7, § 178(c) (2000). The HCO prohibits the issuance of a permit for the conversion of units from residential to tourist use unless the proprietor agrees to provide either one-to-one replacement for those units or to pay a portion of the replacement costs. See S. F. Admin. Code, ch. 41, § 41.13 (2000).

---

*When petitioners first sought to convert their residential units to tourist use, the hotel contained 31 residential units. Petitioners were successful, however, in convincing the San Francisco Board of Permit Appeals to reclassify seven of those as tourist units, producing the hotel's configuration noted in the text.

Pursuant to the HCO, the city obtained two appraisals of the replacement costs for the units petitioners wished to convert. See 67 Cal. Rptr. 2d 562, 570 (1997) (Strankman, P. J., dissenting). The first appraisal was $488,584 and the second was $612,887; the city settled on $600,000. See *ibid.* Petitioners, however, offered only $100,000. See *ibid.* After the Planning Commission denied the permit application, petitioners brought the present suit. They contended that the replacement fee is unconstitutional under this Court's decisions in *Nollan* v. *California Coastal Comm'n*, 483 U. S. 825 (1987), and *Dolan* v. *City of Tigard*, 512 U. S. 374 (1994), which held that a burden imposed as a condition of permit approval must be related to the public harm that would justify denying the permit, and must be roughly proportional to what is needed to eliminate that harm. The California Court of Appeal affirmed the trial court's rejection of petitioners' claim. It held that the HCO played no part in the commission's decision, and therefore "San Francisco did not demand anything from [petitioners] as a condition of a use permit." 67 Cal. Rptr. 2d, at 569. Instead, the court maintained, the commission relied solely on the Planning Code and, basing its decision upon such traditional zoning concerns as compatibility with surrounding development, effect on traffic patterns, and availability of housing stock, "simply denied the permit outright." *Ibid.* Because, the court continued, "neither a property right nor money was in fact taken from [petitioners], there [was] no reason to determine if a taking would have occurred had [petitioners] been required to pay $600,000 as a condition of a use permit, and thus there [was] nothing requiring review under" *Nollan* and *Dolan.* 67 Cal. Rptr. 2d, at 569.

The record belies the Court of Appeal's claim that the commission ignored petitioners' refusal to meet its demand for a $600,000 payment. After acknowledging petitioners' offer of $100,000, the commission compared this figure with the amounts offered by two other hotels that had successfully requested similar conversions. 1 Appellants' App. in No. A076116 (Cal. Ct. App.), pp. 100, 102. It noted that in those two applications, the fee amounted to $10,000 and $15,000 per room, respectively. See *id.*, at 102. (The fee in petitioners' case, by contrast, amounted to only $3,226 per room. See 67 Cal. Rptr. 2d, at 571.) The commission then found that petitioners' application was "not comparable to those previously granted . . . ," because petitioners "failed to demonstrate that the amount offered" was "sufficient to mitigate the loss of

housing stock." 1 Appellants' App., at 102. It is simply and obviously not true that the commission ignored petitioners' refusal to satisfy its fee demand.

The Court of Appeal itself, after asserting that "San Francisco did not demand anything" from petitioners, 67 Cal. Rptr. 2d, at 569, in the next breath found it "somewhat disturbing that San Francisco's concerns about congestion, parking and preservation of a neighborhood *might have been overcome* by payment of [a] significant sum of money," *ibid.* (emphasis added). This observation makes no sense, of course, unless the court concluded from the record that the commission might have rendered a different decision if petitioners had been more generous. It sought to evade the natural consequence of that conclusion with the following unelaborated assertion: "That the Planning Commission *might have granted the permit* upon payment of $600,000 does not make its refusal to issue the permit into a taking." *Ibid.* (emphasis added).

There are three possible readings of the Court of Appeal's opinion. First, and most obviously, one might take at face value the court's factual finding that the fee played *no* role in the decision. That would be a gross distortion of the record.

Secondly, one might ignore the court's initial see-no-evil disclaimer, and assume that it accepted what the record undeniably showed, that petitioners' refusal to meet the fee demand was a motivating force behind the commission's decision. On that assumption, the court's refusal to apply *Nollan* and *Dolan* might be thought to rest upon its determination that that factor was irrelevant, since the commission *also* relied upon ordinary criteria under the Planning Code. But it is *always* the case that if the permit applicant does not yield to the extortionate demand, the *ordinary* criteria will be invoked to deny his permit. If indeed unjustified denial can constitute a taking (the question presented by the third basis for the decision, discussed below), *Nollan* and *Dolan* can surely not be evaded by simply adding boilerplate "ordinary criteria" language to the denial. The increasing complexity of land-use permitting processes, and of the criteria by which permit applications are judged, makes an "ordinary criteria" claim almost always plausible. When there is uncontested evidence of a demand for money or other property—and still assuming that denial of a permit because of failure to meet such a demand constitutes a taking—it should be up to the permitting

authority to establish *either* (1) that the demand met the requirements of *Nollan* and *Dolan,* or (2) that denial would have ensued even if the demand had been met. Cf. *Mt. Healthy City Bd. of Ed.* v. *Doyle,* 429 U. S. 274 (1977). The record (and the Court of Appeal's opinion) make clear that the latter cannot be established here.

Finally, and still on the assumption that the Court of Appeal acknowledged that petitioners' failure to accede to the fee demand was a motivating factor in the commission's denial, the court's refusal to apply *Nollan* and *Dolan* might rest upon the distinction that it drew between the grant of a permit subject to an unlawful condition and the denial of a permit when an unlawful condition is not met. See Cal. Rptr. 2d, at 569 (Strankman, P. J., dissenting) (characterizing the majority's opinion in this fashion). From one standpoint, of course, such a distinction makes no sense. The object of the Court's holding in *Nollan* and *Dolan* was to protect against the State's cloaking within the permit process " 'an out-and-out plan of extortion,' " *Nollan,* 483 U. S., at 837 (quoting *J. E. D. Associates, Inc.* v. *Atkinson,* 121 N. H. 581, 584, 432 A. 2d 12, 14–15 (1981)). There is no apparent reason why the phrasing of an extortionate demand as a condition precedent rather than as a condition subsequent should make a difference. It is undeniable, on the other hand, that the subject of any supposed taking in the present case is far from clear. Whereas in *Nollan* there was arguably a completed taking of an easement (the homeowner had completed construction that had been conditioned upon conveyance of the easement), and in *Dolan* there was at least a threatened taking of an easement (if the landowner *had* gone ahead with her contemplated expansion plans the easement would have attached), in the present case there is neither a taking nor a threatened taking of any money. If petitioners go ahead with the conversion of their apartments, the city will not sue for $600,000 imposed as a condition of the conversion; it will sue to enjoin and punish a conversion that has been prohibited.

The first two of the conceivable bases for the Court of Appeal's decision are so implausible as to call into question the state court's willingness to hold state administrators to the Fifth Amendment standards set forth by this tribunal. There is reason to believe that this may be more than a local and isolated phenomenon. See, *e. g.,* Delaney, Development Agreements: The Road from Prohibition to "Let's Make a Deal!" 25 Urb. Law. 49, 52 (1993) ("In

addition to anti-development attitudes and vesting problems, property owners and developers are confronting decisions of state courts which either ignore or do not follow the 'essential nexus' standard set forth in *Nollan* v. *California Coastal Comm'n* to validate development exactions" (footnote omitted)); M. Berger, Recent Developments in the Law of Inverse Condemnation, Q203 ALI–ABA Video Law Review Study 1, 4 (1991) ("Last year, we noted that the California appellate courts had reacted to the Supreme Court's decisions in *First English Evangelical Lutheran Church* v. *County of Los Angeles*, (1987) 482 U. S. 304 and *Nollan* v. *California Coastal Comm'n* (1987) 483 U. S. 825 by seeking ways to evade their evident mandate, either procedurally or substantively"). Were they the only arguable bases for the decision I would favor summary reversal, and remand for conduct of the *Nollan-Dolan* analysis. The third basis, however, is at least a plausible one, and raises a question that will doubtless be presented in many cases. Though I am unaware of a conflict of authority on the precise point, the other grounds upon which the court relied entitle this case to our attention, and should overcome our usual preference for cases that present actual conflicts. I would therefore grant certiorari and schedule the case for argument.