[No. 22254-0-II.   Division Two.   December 15, 2000.]

THE BENCHMARK LAND COMPANY, *Respondent*, v. THE CITY OF BATTLE GROUND, *Appellant*.

*William D. Kamerrer* (of *Law, Lyman, Daniel, Kamerrer & Bogdanovich*) and *Brian H. Wolfe* (of *Blair, Schaefer, Hutchison & Wolfe, L.L.P.*), for appellant.

*Ronald A. Franz* (of *Law Offices of Ronald A. Franz*) and *Leanne M. Bremer* (of *Miller Nash, L.L.P.*), for respondent.

*Bob C. Sterbank* on behalf of Washington Association of Municipal Attorneys, amicus curiae.

*Pamela B. Loginsky* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

*John M. Groen* and *Stephen Harold G. Overstreet* on behalf of Building Industry Association of Washington, amicus curiae.

*Brent D. Boger* and *Timothy M. Harris* on behalf of Pacific Legal Foundation, amicus curiae.

ARMSTRONG, C.J. — Benchmark Land Company applied to the City of Battle Ground for a development permit. As a condition of approving Benchmark's application, the City required Benchmark to make half-street improvements to a street adjoining the development. We applied a *Nollan/ Dolan*[1] analysis to the condition and held that the City failed to show that the condition was proportional to the development's impact on the street. Accordingly, we affirmed the trial court's decision ruling the condition invalid.[2]

---

[1] *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994).

[2] *Benchmark Land Co. v. City of Battle Ground*, 94 Wn. App. 537, 972 P.2d 944, *review granted, cause remanded by* 138 Wn.2d 1008 (1999).

The Supreme Court granted the City's petition for review and remanded for us to reconsider in light of *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999).

*Del Monte Dunes* was an action by a developer against a city for a regulatory taking. The developer claimed that the city, by over-regulation, had deprived it of all economic use of its property. *Del Monte Dunes*, 526 U.S. at 699, 701. In affirming a jury verdict for the developer, the Ninth Circuit held that the city's regulatory actions, among other things, failed to satisfy the rough-proportionality test of *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994). *See Del Monte Dunes*, 526 U.S. at 702. The Supreme Court disapproved of this comment, noting that it had "not extended the rough-proportionality test of *Dolan* beyond the special context of exactions—land-use decisions conditioning approval of development on the dedication of property to public use." *Del Monte Dunes*, 526 U.S. at 702 (citing *Dolan*, 512 U.S. at 385; *Nollan v. California Coastal Commission*, 483 U.S. 825, 841, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987)). The Court also characterized the *Dolan* rule as inapplicable to a takings claim based on denial of a development permit:

> [The *Dolan* test] was not designed to address, and is not readily applicable to, the much different questions arising where, as here, the landowner's challenge is based not on excessive exactions but on denial of development. We believe, accordingly, that the rough-proportionality test of *Dolan* is inapposite to a case such as this one.

*Del Monte Dunes*, 526 U.S. at 703.

Based on this language in *Del Monte Dunes*, the City renews its argument that *Nollan* and *Dolan* apply only when government, as a condition of approving the development, exacts a dedication of land. The exaction here con-

sisted of money, not land. The proper test to be applied here, according to the City, is that set out in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978), and *Agins v. City of Tiburon*, 447 U.S. 255, 100 S. Ct. 2138, 65 L. Ed. 2d 106 (1980): whether the land-use regulation "substantially advances legitimate state interests and does not deny an owner economically viable use of his land." If the regulation meets these standards, it is not a taking.

Both *Agins* and *Penn Central* dealt with restrictions on development and use of property. *Agins* was a challenge to a city zoning ordinance that required open space and limited the developer's five-acre parcel to five residences. *Agins*, 447 U.S. at 257. The Court held that, although the ordinances did limit the use of the property, they neither prevented the best use of the property nor extinguished a fundamental attribute of ownership. *Agins*, 447 U.S. at 262. *Penn Central* involved New York City's ordinance establishing a program to preserve historic landmark buildings. *Penn Central*, 438 U.S. at 107. The Landmarks Preservation Commission had denied Penn Central's proposals to construct an office tower atop Grand Central Terminal. *Penn Central*, 438 U.S. at 116-18. Penn Central sued, claiming the City had taken its property without just compensation in violation of the Fifth Amendment. *Penn Central*, 438 U.S. at 119. The Court reiterated that the purpose of the Fifth Amendment is " 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Penn Central*, 438 U.S. at 123 (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S. Ct. 1563, 4 L. Ed. 2d 1554 (1960)). But the Court noted in reviewing a number of zoning law decisions that it had "upheld land-use regulations that destroyed or adversely affected recognized real property interests." *Penn Central*, 438 U.S. at 125. Concluding that the City's landmark preservation procedure substantially promoted the general welfare and afforded Penn Central reasonable use of its property, the

Court held that no taking had occurred. *Penn Central*, 438 U.S. at 138.

■■■ In *Nollan*, the Court faced a different problem. In that case, the government granted a permit to replace a small bungalow on a beach front lot on the condition that the owners provide an easement for beach travelers to cross the lot in traveling from one public beach to another. *Nollan*, 483 U.S. at 828. The Court held that the State's power to forbid the construction altogether (if necessary to achieve a legitimate state interest) must "include the power to condition construction upon some concession by the owner, even a concession of property rights, that serves the same end." *Nollan*, 483 U.S. at 836. But the Court held that the development condition (exacting the easement) violated the Takings Clause because it did not further the legitimate state interest (protecting the ocean view of passersby). Thus, there was no nexus between the condition and the problem the State sought to solve. *Nollan*, 483 U.S. at 838-39. The Court also noted that the State, to protect the public's view, could have restricted development of the property with a "height limitation, a width restriction, or a ban on fences . . . ." *Nollan*, 483 U.S. at 836.

In *Dolan*, the government conditioned approval of a store expansion on dedication of land by the store owner to provide a public greenway to combat flooding and provide a pedestrian and bicycle path. *Dolan*, 512 U.S. at 380. The Court found the necessary connection between the condition and the public problem, but it held that the government must also show that the condition required is roughly proportional to the development's impact on the problem that forms the State's legitimate interest. *Dolan*, 512 U.S. at 387, 391. In reaching this conclusion, the Court distinguished its earlier cases approving the government's authority to engage in land use planning. *See Dolan*, 512 U.S. at 385. And one of these distinctions was that the conditions were "not simply a limitation on the use petitioner might make of her own parcel, but a requirement that she deed portions of the property to the city." *Dolan*, 512 U.S. at 385.

Thus, *Nollan* and *Dolan* were unique in requiring dedications of real property. And they were also unique in another aspect. The government in neither *Nollan* nor *Dolan* restricted the use of the property to be developed. Rather, in each, the conditions required the developer to make an affirmative contribution to solve a public problem that existed, at least in part, outside the developed property.

Moreover, despite the language in *Del Monte Dunes*, the Supreme Court has applied a proportionality test when applying the Takings Clause in another setting. *See E. Enters. v. Apfel*, 524 U.S. 498, 118 S. Ct. 2131, 141 L. Ed. 2d 451 (1998). In *Eastern Enterprises*, the Court considered a takings challenge to legislation requiring a former coal mine operator to fund health care benefits for retired miners and their beneficiaries. *E. Enters.*, 524 U.S. at 514. The legislative plan required former coal mine operators to fund benefits based on the operators' participation in earlier health care plans or employment of a qualified retiree in the past. Eastern was assessed premiums for a number of qualified retirees because of past employment. *E. Enters.*, 524 U.S. at 517. A plurality of the Court concluded that the legislative plan violated the Takings Clause because it "impose[d] severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience." *E. Enters.*, 524 U.S. at 528-29. The plurality, in reviewing earlier decisions in the area, commented that "our decisions upholding the [Multiemployer Pension Plan Amendment Act of 1980] suggest that an employer's statutory liability for multiemployer plan benefits should reflect some 'proportion[ality] to its experience with the plan.'" *E. Enters.*, 524 U.S. at 530 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 645, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993) (citing *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 226, 106 S. Ct. 1018, 89 L. Ed. 2d 166 (1986))). In short, the funding required of Eastern was a

taking because the calculated amount was "unrelated to any commitment that the employers made or to any injury they caused . . . ." *E. Enters.*, 524 U.S. at 537.

Although the condition exacted here was money, not land, we conclude that the *Dolan* proportionality test applies. The City, as in *Nollan* and *Dolan*, did not restrict the development of the property by limiting the number of residences, requiring wider streets in the property, requiring dedicated open space, imposing height limits or other similar conditions. Instead the City required the developer to address a problem that existed outside the development property—an adjoining street in need of improvement. And the development did not cause this problem; at most, it only aggravated it.

Although *Del Monte Dunes* defines "exactions" as "decisions conditioning approval of development on the dedication of property," 526 U.S. at 702, we emphasize the similarity of exacting land and money. If the government in *Nollan* and *Dolan* had exacted money rather than land and then purchased land to solve the problems, the same questions would arise: was the money exacted for and used to solve a problem connected to the proposed development? (*Nollan*.) And was the amount of money exacted roughly proportional to the development's impact on the problem? (*Dolan*.) Surely if the issues for an exaction of money are the same as for an exaction of land, the test must be the same: a showing of "nexus" and "proportionality."

We find no inconsistency between this analysis and the comment in *Del Monte Dunes* that *Dolan* was "inapposite." In *Del Monte Dunes*, the developer did not challenge the City's requirement that part of the land be set aside for a public beach, a buffer zone, a view corridor, and butterfly habitat. Rather, the developer claimed that the City did not intend to allow the development under any circumstances and sought to accomplish this goal through over-regulation. *Del Monte Dunes*, 526 U.S. at 699. Thus, a *Dolan* proportionality analysis was inapposite in *Del Monte Dunes* because the government did not exact land or money.

Further, if the *Dolan* proportionality test does not apply, the government can exact conditions such as the one here with few limits.[3] The condition advances a legitimate state interest—improving the public roads. And the condition does not deny the developer all economically viable use of its land. But the condition also seeks to force "some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong*, 364 U.S. at 49. It is this attempted transfer of a public burden that calls for a *Dolan* proportionality test.

We deny the motion to reconsider.

MORGAN and BRIDGEWATER, JJ., concur.

Review granted at 143 Wn.2d 1018 (2001).

---

[3] Land use regulations are also subject to a substantive due process challenge. *See Christianson v. Snohomish Health Dist.*, 133 Wn.2d 647, 946 P.2d 768 (1997).