5 So.3d 8 (2009)
ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, Appellant,
v.
Coy A. KOONTZ, Jr., etc., Appellee.
No. 5D06-1116.
District Court of Appeal of Florida, Fifth District.
January 9, 2009.
Order Granting Motion for Clarification March 20, 2009.
Rehearing Denied March 20, 2009.
William H. Congdon, Palatka, for Appellant.
Christopher V. Carlyle, Shannon McLin Carlyle and Gilbert S. Goshorn, Jr., of The Carlyle Appellate Law Firm, The Villages, and Michael D. Jones, of Michael D. Jones & Associates, P.A., Winter Springs, for Appellee.
TORPY, J.
St. Johns River Water Management District ["the District"] appeals the trial court's final judgment awarding Coy A. Koontz, Jr., as personal representative of the Estate of Coy A. Koontz, Sr., compensation for the District's temporary taking of Coy A. Koontz, Sr.'s ["Mr. Koontz"] property. This is the fourth time that this case has been appealed to this Court. See Koontz v. St. Johns River Water Mgmt. Dist., 720 So.2d 560 (Fla. 5th DCA 1998) *9 ["Koontz I"]; St. Johns River Water Mgmt. Dist. v. Koontz, 861 So.2d 1267 (Fla. 5th DCA 2003) ["Koontz II"]; St. Johns River Water Mgmt. Dist. v. Koontz, 908 So.2d 518 (Fla. 5th DCA 2005) ["Koontz III"]. We affirm.
This case involves a landowner, Mr. Koontz, who, in 1994, requested permits from the District so that he could develop a greater portion of his commercial property than was authorized by existing regulation. The District replied that it would approve the permits only if Mr. Koontz agreed to satisfy certain conditions, one of which was the performance of "off-site" mitigation involving property a considerable distance from Mr. Koontz's property. Mr. Koontz contended that the conditions were unreasonable and rejected the offer. The District then denied the permits. Based on the permit denial, Mr. Koontz brought an inverse condemnation claim asserting an improper "exaction" by the District.[1]
In the most general sense, an "exaction" is a condition sought by a governmental entity in exchange for its authorization to allow some use of land that the government has otherwise restricted.[2] Even though the government may have the authority to deny a proposed use outright, under the exactions theory of takings jurisprudence, it may not attach arbitrary conditions to issuance of a permit. See Dolan v. City of Tigard, 512 U.S. 374, 397, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (Stevens, J., dissenting) (acknowledging correctness in majority's conclusion that arbitrary conditions may not be imposed even when government has authority to deny permit).
In relating the circumstances giving rise to this case, the trial court explained:
The subject property is located south of State Road 50, immediately east of the eastern extension of the East-West Expressway in Orange County. The original plaintiff, Coy Koontz, has owned the subject property since 1972. In 1987, a portion of the original acreage adjacent to Highway 50 was condemned, leaving Mr. Koontz with 14.2 acres. There is a 100-foot wide transmission line easement of Florida Power Corporation running parallel to and about 300 feet south of Highway 50, that is kept cleared and mowed by Florida Power. A 60-foot wide drainage ditch runs north and south on the west boundary of the property.
The portion of the site that is proposed for development has been seriously degraded from its condition in 1972, by all of the activity around it. There has been intense development in the vicinity, both residential and commercial, and road construction and other governmental projects. The site's usefulness as an animal habitat has been severely reduced.
All but approximately 1.4 acres of the tract lies within a Riparian Habitat Protection Zone (RHPZ) of the Econlockhatchee River Hydrological Basin and is *10 subject to jurisdiction of the St. Johns River Water Management District.
In 1994, Koontz sought approval from the District for a 3.7 acre development area adjacent to Highway 50, of which 3.4 acres were wetlands and .3 acres were uplands.
In his concurring opinion in Koontz II, Judge Pleus explained the positions taken by the parties during the permit approval process:
Koontz proposed to develop 3.7 acres closest to Highway 50, back to and including the power line easement. In order to develop his property, he sought a management and storage of surface waters permit to dredge three and one quarter acres of wetlands. A staffer from St. Johns agreed to recommend approval if Koontz would deed the remaining portion of his property into a conservation area and perform offsite mitigation by either replacing culverts four and one-half miles southeast of his property or plug certain drainage canals on other property some seven miles away. Alternatively, St. Johns demanded that Koontz reduce his development to one acre and turn the remaining 14 acres into a deed-restricted conservation area. Koontz agreed to deed his excess property into conservation status but refused St. Johns' demands for offsite mitigation or reduction of his development from three and seven-tenths acres to one acre. Consequently, St. Johns denied his permit applications.
Id. at 1269 (Pleus, J., concurring specially). In its orders denying the permits, the District said that Mr. Koontz's proposed development would adversely impact Riparian Habitat Protection Zone ["RHPZ"] fish and wildlife, and that the purpose of the mitigation was to offset that impact.
After hearing conflicting evidence, the trial court concluded that the District had effected a taking of Mr. Koontz's property and awarded damages. In reaching this conclusion, the trial court applied the constitutional standards enunciated by the Supreme Court in Nollan and Dolan. In Nollan, with respect to discretionary decisions to issue permits, the Supreme Court held that the government could impose a condition on the issuance of the permit without effecting a taking requiring just compensation if the condition "serves the same governmental purpose as the developmental ban." 483 U.S. at 837, 107 S.Ct. 3141. This test is referred to as the "essential nexus" test. In Dolan, the Court added the requirement that, for such a condition to be constitutional, there must also be a "rough proportionality" between the condition and the impact of the proposed development. 512 U.S. at 390-91, 114 S.Ct. 2309.
Here, the trial court determined that the off-site mitigation imposed by the District had no essential nexus to the development restrictions already in place on the Koontz property and was not roughly proportional to the relief requested by Mr. Koontz. The District makes no challenge to the evidentiary foundation for these factual findings. Instead, it advances arguments directed to the trial court's jurisdiction and the legal viability of Mr. Koontz's claim. The District argues that the lower court never had subject matter jurisdiction to hear Mr. Koontz's claim because section 373.617(2), Florida Statutes, the statute under which Mr. Koontz maintained his claim, expressly limits the scope of circuit court review to cases in which a constitutional taking is proven. It argues that Mr. Koontz's claim is really a challenge to the merits of the permit denial, which it contends may only be pursued in an administrative proceeding. Although the District acknowledges that an exaction claim is a form of takings claim, and is thus cognizable *11 under the statute, it argues that no such exaction occurred here because nothing was exacted from Mr. Koontz. This argument, although couched in terms of jurisdiction, really addresses itself to whether an exaction claim is cognizable when, as here, the land owner refuses to agree to an improper request from the government resulting in the denial of the permit. This is a question that has evoked considerable debate among academics and is the primary point of the dissent.[3]
Despite the ongoing debate, we conclude that this question has already been answered in Dolan itself, which also involved a challenge to rejected conditions. Although the Dolan majority did not expressly address the issue, the precise argument was addressed by the dissent and, thus, implicitly rejected by the majority. Dolan, 512 U.S. at 408, 114 S.Ct. 2309 (Stevens, J., dissenting). The argument was also directly addressed and rejected in Parks v. Watson, 716 F.2d 646 (9th Cir. 1983), a case upon which the Supreme Court relied in deciding Nollan. See Goss v. City of Little Rock, 90 F.3d 306, 309-10 (8th Cir.1996) (Dolan applicable when owner alleges he refused permit predicated upon unlawful condition; case remanded for further proceedings); Town of Flower Mound v. Stafford Estates Ltd. P'ship, 135 S.W.3d 620, 625 (Tex.2004) ("any requirement that a developer provide[s] or do[es] something as a condition to receiving municipal approval is an exaction."); Salt Lake County v. Bd. of Educ. of Granite Sch. Dist., 808 P.2d 1056, 1058 *12 (Utah 1991) (exactions include land dedications or payment of fees as condition for issuance of permit).[4]
The District also contends that an action does not lie here because the condition it imposed did not involve a physical dedication of land but instead a requirement that Mr. Koontz expend money to improve land belonging to the District. Again, we conclude that the Supreme Court has already implicitly decided this issue. In Ehrlich v. City of Culver City, 512 U.S. 1231, 114 S.Ct. 2731, 129 L.Ed.2d 854 (1994), the city conditioned a permit on the payment of money to build tennis courts and purchase artwork. Although the state appellate court upheld the imposition of the conditions, the Supreme Court vacated the decision and remanded the case to the state court to reexamine it in light of Dolan. Absent a more definitive pronouncement from our high court on this issue, we conclude that the distinction advanced by the District is not legally significant. See Mark Fenster, Takings Formalism and Regulatory Formulas: Exactions and the Consequences of Clarity, 92 Cal. L. Rev. 609, 637 (2004) (suggesting that Supreme Court "may have settled this issue in favor of extending Nollan and Dolan to non-possessory exactions" when it remanded Ehrlich); see also Town of Flower Mound, 135 S.W.3d 620; Benchmark Land Co. v. City of Battle Ground, 103 Wash.App. 721, 14 P.3d 172 (2000).[5]
We have carefully reviewed the District's remaining arguments but dismiss them without further discussion.
AFFIRMED.
*13 ORFINGER, J., concurs, with opinion.
GRIFFIN, J., dissents, with opinion.
ORFINGER, J., concurring with opinion.
I concur with the Court's opinion. I write separately to comment on several unsettled issues in the jurisprudence of exactions and takings.

What Is An Exaction?
Though Nollan[1] and Dolan[2] established a two-part test to determine the constitutionality of an exaction demanded by the government as a condition for development approval, the threshold question of what constitutes an exaction, thereby triggering the Nollan/Dolan analysis is far from settled. See generally Jane C. Needleman, Exactions: Exploring Exactly When Nollan and Dolan Should be Triggered, 28 Cardozo L. Rev. 1563 (2006). Neither courts nor academics subscribe to a single definition. For example, one academic defines an exaction as a requirement that a landowner give up a constitutionally-protected right in exchange for some benefit from the government. Stewart E. Sterk, What Counts as an Exaction?, 19 No. 4 N.Y. Real Est. L. Rep. 1, 3 (Feb. 2005). Another expanded on this definition, concluding that exactions are "the concessions local governments require of property owners as conditions for the issuance of the entitlements that enable the intensified use of real property." Mark Fenster, Takings Formalism & Regulatory Formulas: Exactions & the Consequences of Clarity, 92 Cal. L. Rev. 609, 611 (2004). The Texas Supreme Court embraced a similar broad definition, recognizing that "any requirement that a developer provide[s] or do[es] something as a condition to receiving municipal approval is an exaction." Town of Flower Mound v. Stafford Estates Ltd. P'ship, 135 S.W.3d 620, 625 (Tex.2004). Likewise, the Utah Supreme Court in Salt Lake County v. Board of Education of Granite School District, 808 P.2d 1056, 1058 (Utah 1991), explained:
[D]evelopment exactions may be defined as contributions to a governmental entity imposed as a condition precedent to approving the developer's project. Usually, exactions are imposed prior to the issuance of a building permit or zoning/subdivision approval... [and] may take the form of: (1) mandatory dedications of land for roads, schools or parks, as a condition to plat approval, (3) water or sewage connection fees, and (4) impact fees.
(Quotations and citations omitted). Finally, in City of Monterey v. Del Monte Dunes at Monterey Ltd., 526 U.S. 687, 702, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), the United States Supreme Court concluded that exactions are "land-use decisions conditioning approval of development on the dedication of property to public use."
Regardless of how one chooses to define an "exaction," the first step in a Nollan/Dolan analysis is to determine whether the required "exaction," be it a dedication, fee or improvement, if separated from the development prohibition, would constitute a taking. If it would constitute a taking separate from the development prohibition, only then do I believe that the Nollan/Dolan standards become relevant. See Sterk, supra at 3.

Can There Be A Taking When the Landowner Says No?
The dissent argues that Mr. Koontz has no right to compensation, as no taking occurred, given his refusal to surrender to the government's demands. This argument *14 is premised on the notion that after the government turned down his application, Mr. Koontz had the same development rights that he had before he began the permitting process. He lost nothing, as nothing had changed. Given the divergent views of what constitutes an exaction, that argument has logical appeal, and was the specific argument made in the dissent by Justice Stevens in Dolan. See Dolan, 512 U.S. at 408, 114 S.Ct. 2309 (Stevens, J., dissenting). Had the Dolan majority not rejected this precise argument, I would agree with the dissent on this point as it is doctrinally and logically supportable.

Should the Doctrine of Unconstitutional Conditions be Applied to Takings Jurisprudence?
The "exactions" theory of takings jurisprudence has its roots in "the well-settled doctrine of `unconstitutional conditions,'" which sets limits on the manner by which the government exercises its discretionary authority. Dolan, 512 U.S. at 385, 114 S.Ct. 2309. However, while the doctrine of unconstitutional conditions may be "well-settled," it is certainly not well understood. See generally Cass R. Sunstein, Why the Unconstitutional Conditions Doctrine is an Anachronism (With Particular Reference to Religion, Speech, and Abortion), 70 B.U.L. Rev. 593 (1990); Richard A. Epstein, Unconstitutional Conditions, State Power and the Limits of Consent, 102 Harv. L. Rev. 4 (1988).
In general terms, the "doctrine of unconstitutional conditions" holds that the government ordinarily may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government has the discretion to withhold the benefit altogether. 16A Am. Jur. 2d Constitutional Law § 395 (2008). But applying that premise in the real world is extremely problematic. One who labors in this field might reasonably ask: When may the government properly ask a citizen to waive a constitutional right in order to obtain a benefit the government has no obligation to provide? The answer suggested by the doctrine of unconstitutional conditions "is that sometimes the government may condition discretionary benefits on the waiver of rights, and sometimes it may not." See Thomas W. Merrill, Dolan v. City of Tigard: Constitutional Rights as Public Goods, 72 Denv. U. L. Rev. 859, 859 (1995). That uncertainty and unpredictability in the law benefits no one.
As the instant case demonstrates, when the government has the absolute discretion to grant or deny a privilege or benefit, it still may incur significant liability if, at the conclusion of the land use/development decision, it is found to have improperly pressured or coerced the landowner to give up or waive a constitutional right. And even more troubling, the potential for governmental liability may be just as likely if the government simply reaches a bit too far in the bargaining process. By way of example, no one can doubt that it would be improper to condition receipt of government approval for a development on the agreement of the developer to vote for a certain candidate in an upcoming election. In that circumstance, we would easily find such a condition to be unconstitutional. However, a more likely scenario is one in which the government asks the landowner for the dedication of twenty acres of wetlands for conservation purposes. Then, after the fact, a court concludes that only a ten-acre dedication was "roughly proportional" to the impact of the proposed development. The consequence of the government asking for a bit too much (but far short of extortion) is governmental liability for damages premised on the exactions theory.
*15 Given the imprecision inherent in the application of the doctrine of unconstitutional conditions, and assuming that governmental entities are generally risk averse, the response from the government to a request by a landowner for a discretionary benefit will likely be a resounding "no." That is unfortunate because at their best, "exactions reflect a sincere government effort to require developers to pay for the costs development places on the surrounding community." Mark W. Cordes, Legal Limits on Development Exactions: Responding to Nollan and Dolan, 15 N. Ill. U. L. Rev. 513, 513 (1995).[3]
Because the burden to justify a requested exaction is on the government, liability can be avoided if the government simply refuses to engage in the bargaining process with a landowner. Or, a more likely outcome is that the government will refuse to offer any conditions in exchange for development approval, but will consider offers from the landowner. It is hard to imagine that a landowner could invoke the doctrine of unconstitutional conditions and claim a taking if the landowner, and not the government, initiates the bargaining process and makes all of the offers. This role reversal accomplishes little, but seems a possible outcome given the uncertainty inherent when applying the doctrine of unconstitutional conditions to land use/development decisions rather than more traditional takings jurisprudence.
There is no doubt that the government should act reasonably in its negotiations with landowners during the permitting process. However, given the imprecision inherent in the "essential nexus" and "rough proportionality" tests mandated by Nollan and Dolan, the government risks significant liability if, after the fact, it is found to have asked for too much. Overreacting is an inherent risk in the bargaining process. But should every misstep by the government, however reasonable, equate to a taking and create liability? In Fourth Amendment jurisprudence, the United States Supreme Court held that "what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable." Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). I think Nollan and Dolan should likewise be read to require governments to act reasonably in its permitting and land use decisions, while recognizing that such decisions may not always be correct. Perhaps the Supreme Court intended the "rough proportionality" test to encompass such a "wrong but reasonable" standard, but that is far from clear.
GRIFFIN, J., dissenting.
The majority speaks as if this case is no more than the unremarkable application of settled "exaction" law from the United States Supreme Court. I disagree. There is very little of the law important to this case that is settled law, and if the outcome in this case is dictated by the law of exaction, then somebody needs to get it fixed.
In basic terms, this is what happened:
Mr. Koontz had a mostly wetland fourteen-acre piece of undeveloped land on which he wanted to put a commercial development. For this, he needed a permit from the St. Johns River Water Management District ["the District"]. He concedes he had no right to the permit, and he acknowledges that the government had *16 the right to turn him down flat but, following the time-honored legal principle that "there is no harm in asking,"[1] he submitted an application. This turned out to be a lucrative move, which, in light of this Court's decision, will no doubt be widely emulated all over the State of Florida. Elizabeth Johnson, a scientist employed by the District, told Mr. Koontz that the District would be willing to partly grant his request and allow either the development of one acre, preservation of the balance and no off-site mitigation or development of 3.7 acres, preservation of the balance and some off-site mitigation to enhance fifty acres of existing wetlands a few miles away by cleaning some culverts and ditches.[2] Mr. Koontz apparently thought this latter proposal was OK, except for the part about the culverts and ditches, and so he refused. In the absence of agreement, the permit was denied.
In 1994, Mr. Koontz filed an inverse condemnation lawsuit, claiming that, by imposing an unreasonable condition on the issuance of a permitthe off-site mitigation the District had taken his property.
Mr. Koontz stipulated that he was not "proceeding upon a theory that the two District final orders deprived [him] of all or substantially all economically beneficial or productive use of the subject property." Rather, in describing the issue to be litigated, he stated:
The issue before this Court is whether the conditions imposed by the District on the Koontz property and in particular, the required mitigation, resulted in a regulatory taking of Koontz property. The off-site mitigation did not serve a substantial purpose.
This theory was principally based on Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). However, during the twelve years this suit proceeded below, Mr. Koontz' original theory of liability evaporated. In 2005, the United States Supreme Court issued its decision in Lingle v. Chevron, 544 U.S. 528, 532, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), which significantly revised and restated federal "takings" jurisprudence.
In its order determining liability, the trial court explained that it did not appear to the court that Mr. Koontz had a "taking" claim, but that it felt bound to find one by virtue of this Court's 1998 opinion in Koontz I that a legally sufficient "taking" claim had been pled that was ripe for determination on the merits.[3] The trial *17 judge ultimately settled on the Nollan/Dolan "exaction theory." He found as a matter of fact that the off-site mitigation condition met neither the Nollan/Dolan "nexus" or "rough proportionality" requirements and that, accordingly, the District had "taken" Mr. Koontz' property. Mr. Koontz was awarded, as compensation for this "taking," the sum of $376,154.00. This was calculated to be the rental value of the property based on a valuation with the permit of $477,000. The rental term was calculated to be from 1999, when the permit was denied, until the permit was issued in 2005.[4]
On appeal, the District does not contest the trial court's determination that the off-site mitigation condition was an "exaction" under Nollan/Dolan, but the District does contend that there was no "taking." I agree and would reverse this judgment.
It is clear after Nollan that the notion of "unconstitutional conditions" imposed by a government on the grant of a discretionary benefit, such as a permit, can cause a taking of property. Nollan, and later, Dolan, were occupied, however, with the problem of defining what sorts of conditions on the use or development of real property rose to the level of "unconstitutional." The legal effect of a judicial determination that an agency has imposed an unconstitutional condition, which the Court dubbed an "exaction" is barely and only inferentially dealt with. Dolan was remanded to the state court to make an individualized determination whether the land dedication condition was related both in nature and extent to the impact of the proposed development. 512 U.S. at 391, 114 S.Ct. 2309
There are multiple basic questions about "exaction" law that have not yet been answered by the United States Supreme Court, and the limited number of cases decided by lower courts in light of Nollan and Dolan are not very helpful. In my opinion, the majority has chosen the wrong answers to several basic questions about "exactions."
The first and most basic question posed by this case is whether the imposition of an unconstitutional condition on an agency's issuance of a land use permit is necessarily a "taking" of the real property. There is little doubt after Nollan and Dolan that an unconstitutional condition that requires a landowner to give up any of its bundle of rights in the land is a "taking." That was the kind of condition that was at issue in those two cases, and a fair reading of the various opinions in Nollan and Dolan suggests that all the Court had in mind was the agency's acquisition of an interest in real property. In two later cases, Lingle and City of Monterey v. Del Monte Dunes, 526 U.S. 687, 702-03, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999), the Supreme Court indicated that application of Nollan and Dolan was limited to cases involving the dedication of private property as a condition of permit approval. See Lingle, 544 U.S. at 547, 125 S.Ct. 2074 (noting that Nollan and Dolan not extended beyond special context of exactions requiring *18 dedication of private property as condition of permit approval); City of Monterey, 526 U.S. at 702-03, 119 S.Ct. 1624 ("[W]e have not extended the rough-proportionality test of Dolan beyond the special context of exactionsland-use decisions conditioning approval of development on the dedication of property to public use."). Legal scholars who have focused on these cases agree that the issue is up in the air. See, e.g., Mark Fenster, Takings Formalism and Regulatory Formulas: Exactions and the Consequences of Clarity, 92 Cal. L. Rev. 609, 635-42 (2004); Mark Fenster, Regulating Land Use in a Constitutional Shadow: The Institutional Contexts of Exactions, 58 Hastings L.J. 729 (2007).
Given the Court's description of an "unconstitutional condition," and the cases it relied upon in Nollan and Dolan as the source of this law, I do not see any principled way to distinguish an unconstitutional condition that requires a permit applicant to give up an interest in land from one that requires the permit applicant to give up anything else that belongs to him. If the condition does not meet the "nexus" and "rough proportionality" tests of Nollan/Dolan, it is invalid. As Nollan and Dolan make clear, such an "exaction" may constitute a "taking"; it is not, however, necessarily a "taking." Whether a "taking" has occurred ought to dependand I suggestdoes depend on whether any protected interest in land is actually given up. If it is, whether temporarily or permanently, the landowner is entitled to compensation as set forth in the "taking" cases. If, however, the unconstitutional condition does not involve the taking of an interest in land, the remedy of inverse condemnation is not available. In this case, the objected-to condition that was found to be an exaction was not an interest in land; it was the requirement to perform certain off-site mitigation in the form of clean-up of culverts and ditches to enhance wetlands several miles away.
This does not mean that Mr. Koontz was without a remedy for this transgression on the part of the District. He no doubt has several. Most obviously, he could do as was done in the Nollan/Dolan cases, as well as most other subsequently reported cases, and challenge the permit denial or condition as invalid. Mr. Koontz did not have an absolute right to a permit, but he did have an enforceable right to consideration of his permit application, burdened only with constitutional conditions. If he had acquiesced in the District's unconstitutional demands, he should have had the right to recover whatever "exaction" he had paid or performed. He was not entitled, however, to a judgment in inverse condemnation for the temporary taking of his land. The right to compensation for the temporary or permanent taking of property under Florida law requires that substantially all beneficial value in the land actually be taken. In this case, nothing was ever taken.
The law of "unconstitutional conditions," which mainly grew out of the government's attempt to impose conditions on public employment limiting freedom of speech, such as loyalty oaths, is poorly developed in the cases and rarely applied. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Pickering v. Bd. of Edu., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Facile as it may seem to say, getting or keeping a government job and being compensated for the taking of private property are two very different things. In the employment cases, the employee either already had a job, or would have had the job, but for the unconstitutional condition. In those cases, the litigation simply invalidated the condition. To say that an agency's imposition of a condition on the discretionary grant of *19 a permit to develop real property necessarily "takes" the property until the condition is removed is illogical. If an agency imposes an unconstitutional condition on public employment that deprives a person of his right of free association or free speech, the invalidation of the condition does not require that the government employ, or continue in employment, anyone who was burdened by the condition. The unconstitutional condition is simply removed and the individual may or may not be hired or continued in employment based on constitutional criteria. By imposing an unconstitutional condition, the agency did not "take" the job. In this case, when the District imposed an unconstitutional condition on the application for permit approval, the District did not take the land, and Mr. Koontz was not entitled to be compensated as if it had been taken. Clearly, though, if what was exacted from Mr. Koontz was money or services, not real property, under the reasoning of Nollan/Dolan, he could recover it.
For example, in Town of Flower Mound v. Stafford Estates Limited Partnership, 135 S.W.3d 620 (Tex.2004), the Texas Supreme Court considered a case where a developer was required to rebuild a road as a condition to development. The court found that the Town had extracted a benefit to which the Town was not entitled and approved as the measure of damages the cost of the exaction, less the cost of improvements that the developer should have had to pay anyway and special benefits to the development. 135 S.W.3d at 627. It makes no sense that the damages for an exaction that is acceded to is the cost of the exaction, but an exaction not acceded to gives rise to a "taking" of the property.
Another important issue that the United States Supreme Court has also yet to directly address is the issue of whether Nollan and Dolan can apply in a circumstance where the landowner has rejected the condition, and, therefore, nothing has been exacted. See Fenster, 92 Cal. L. Rev. at 639. In Lambert v. City & County of San Francisco, 57 Cal.App.4th 1172, 67 Cal.Rptr.2d 562, 569 (1997), cert. denied, 529 U.S. 1045, 120 S.Ct. 1549, 146 L.Ed.2d 360 (2000), the court concluded that because the condition was rejected "neither a property right nor money was in fact taken... there is [therefore] nothing requiring review under the Nollan/Dolan/Ehrlich standard." When the United States Supreme Court denied certiorari review of this decision, Justice Scalia wrote a dissent briefly discussing this issue, calling it "plausible":
It is undeniable, on the other hand, that the subject of any supposed taking in the present case is far from clear. Whereas in Nollan there was arguably a completed taking of an easement (the homeowner had completed construction that had been conditioned upon conveyance of the easement), and in Dolan there was at least a threatened taking of an easement (if the landowner had gone ahead with her contemplated expansion plans the easement would have attached), in the present case there is neither a taking nor a threatened taking of any money. If petitioners go ahead with the conversion of their apartments, the city will not sue for $600,000 imposed as a condition of the conversion; it will sue to enjoin and punish a conversion that has been prohibited.
Lambert, 529 U.S. at 1048, 120 S.Ct. 1549 (Scalia, J. dissenting).
The majority's only response to this point is that the issue was already settled in Dolan because, when it was raised in Justice Stevens' dissent, the majority ignored the issue. I suggest it was not addressed in the Dolan majority opinion, not because it was so lacking in substance that it did not merit any ink, but because *20 at that procedural juncture in Dolan, it simply was not relevant. Dolan came to the Court through Oregon's administrative appeal process. Mrs. Dolan sought review of the decision of the Land Use Board of Appeals that a requirement of dedication of a portion of her property for drainage and a bike path were valid conditions to attach to approval of her application for a permit to enlarge her store. The fact that she had not made the dedication was no impediment to her right to appeal the decision. If, after exhaustion of her appeals, the condition were found to be valid, or "constitutional," she could then decide to accept or decline. All the Court did in Dolan was announce the second prong of the "exactions" test and send it back to see whether she ought to prevail in her appeal.
If we are going to be deciding this issue based on what was not said in an opinion, surely the fact that Justice Scalia never mentioned in his Lambert dissent that this issue already had been decided in Dolan is significant. For my money, given Justice Scalia's proclivities in this area of the law, for him to refer to the absence of a "taking" as a "plausible" defense to a "takings" claim is a pretty big deal. Besides, in what parallel legal universe or deep chamber of Wonderland's rabbit hole could there be a right to just compensation for the taking of property under the Fifth Amendment when no property of any kind was ever taken by the government and none ever given up by the owner?
The position that a regulatory taking can occur under a land-use exaction theory in circumstances where the permit is denied and no property interest is actually conveyed may have made some sense in the pre-Lingle world; however, now that Lingle has clarified the proper focus of regulatory takings analysis, the position that a "taking" has occurred solely because the State made an offer that was rejected is untenable. It is not the making of an offer to which unconditional conditions are attached in violation of the limitations of Nollan/Dolan that gives rise to a taking; it is the receipt of some tangible benefit under such coercive circumstances that gives rise to the taking. See Lingle, 544 U.S. at 539-40, 125 S.Ct. 2074.
Faced with the unconstitutional condition offered by the District in this case, Mr. Koontz had several options that he could have pursued. If he performed the mitigation, he could have sought recovery for it,[5] or he could have gotten a judicial determination that the condition was invalid by administratively appealing the District's decision. Just as with an ordinary inverse condemnation case, if the State demands an interest in land for which it offers no compensation, there is only a "taking" if the interest is actually taken. It is not the demand that is compensable, only the taking. If a landowner decides not to accede, his remedy is to contest the government action. Here, Mr. Koontz elected not to contest the validity of the permit denial decision on any basis other than a "taking."[6]
Nollan and Dolan are exactly the same. In explaining the concept of an exaction-type of "taking" in Dolan, the Court said that requiring the landowner to dedicate two strips of her property as a condition of approval might be a taking of the dedicated land. There is no suggestion that it was a taking of the entire 1.67 acre parcel. What is "taken" in these cases is what was improperly exacted. In this case, if Mr. Koontz had given in to the District's condition, gotten his development permit and *21 done the off-site mitigation, he would be entitled to recover the value of the off-site mitigation. If he elected to refuse the offer, he had a judicial remedy to invalidate the condition, just as Mrs. Dolan did. The parcel of land for which he sought the development permit was not, however, in any wise "taken" by the District. The only way a "taking" can even be conceptualized in such a circumstance is by adopting the view that by proposing an "unconstitutional condition" that was rejected, the District forfeited its right (and duty) to protect the public interest to refuse the permit at all.
To suggest that the agency might forfeit its right to refuse or require constitutional conditions for issuance of a permit because the agency guessed incorrectly where the boundaries of "nexus" or "rough proportionality" lay has no basis in logic or in any law that I can find. Nor is it fair or practical. As challenging as this case has been to apply Nollan/Dolan exaction law, I am at least grateful that this case does not involve a nexus/rough proportionality analysis. Reading cases from other jurisdictions where courts have had to struggle with these twin issues shows that this analysis can be extremely complex, but in the final analysis, it is completely arbitrary. See Ocean Harbor House Homeowners Ass'n v. Cal. Coastal Comm'n, 163 Cal. App.4th 215, 77 Cal.Rptr.3d 432 (2008); B.A.M. Dev. L.L.C. v. Salt Lake County, 196 P.3d 601 (Utah 2008). The twin issues of "nexus" and "rough proportionality" might be apparent in some cases at the margins, but in most of these cases, they come down to a judge's subjective opinion about connection and equivalency. No agency in its right mind will wade into this swamp. It will be too risky for a governmental agency to make offers for conditional permit approvals or to offer a trade of benefits out of fear that the offer might be rejected and the condition later found to have lacked adequate nexus or proportionality. Better to deny the permit and defend the decision under the traditional law of regulatory "takings."
I recognize that one judge looking at the facts of this case might see reasonable conduct on the part of the District to allow a landowner some flexibility to develop his land, even if it involves wetland destruction, by securing a benefit for the public's interest in improving wetlands within the same geographic basin, while another judge will see "gimmickry"[7] designed to steal from Mr. Koontz. Surely, even the most extreme view that conditions imposed on the issuance of a permit constitute an "out and out plan of extortion" would, nevertheless, recognize that removal of the unconstitutional condition cannot mean the applicant acquires the right to be free of any condition. Such a judicially-invented notion might not do much harm on fourteen acres in the middle of rural central Florida but in a thousand other contexts, it could be disastrous.
In Nollan, the Court held that the government could impose a condition on the discretionary decision to issue a permit without effecting a taking requiring just compensation if "the permit condition serves the same governmental purpose as the developmental ban." Nollan, 483 U.S. at 837, 107 S.Ct. 3141. Mr. Koontz had the right to a constitutional conditionno more, no less.
Finally, land-use exaction theory only appears to apply in circumstances where the property owner is faced with a choice between an exaction and permit denial. In this case, Mr. Koontz was never in that position because he had a third option modification of his development to one *22 acre with no "exaction." The trial court never found that the proffer of this option by the District was any form of a "taking."
In summary, correct application of exactions law requires the conclusion in this case that, although the off-site mitigation condition for issuance of the permit was invalid, nothing was ever "taken" from Mr. Koontz, in the Fifth Amendment sense of the word, and he has no right to recovery in inverse condemnation.

ON MOTION FOR CERTIFICATION
PER CURIAM.
Upon our consideration of Appellant's Motion for Certification, we grant the motion and certify the following question to the Florida Supreme Court as one of great public importance:
WHERE A LANDOWNER CONCEDES THAT PERMIT DENIAL DID NOT DEPRIVE HIM OF ALL OR SUBSTANTIALLY ALL ECONOMICALLY VIABLE USE OF THE PROPERTY, DOES ARTICLE X, SECTION 6(a) OF THE FLORIDA CONSTITUTION RECOGNIZE AN EXACTION TAKING UNDER THE HOLDINGS OF NOLLAN[1] AND DOLAN[2] WHERE, INSTEAD OF A COMPELLED DEDICATION OF REAL PROPERTY TO PUBLIC USE, THE EXACTION IS A CONDITION FOR PERMIT APPROVAL THAT THE CIRCUIT COURT FINDS UNREASONABLE?
QUESTION CERTIFIED.
GRIFFIN, ORFINGER and TORPY, JJ., concur.
NOTES
[1] Mr. Koontz also asserted other theories that are not relevant to our disposition of this appeal.
[2] The "exactions" theory has roots in "the well-settled doctrine of `unconstitutional conditions,'" which sets constitutional limits on the manner by which the government bargains away its discretionary authority. Dolan v. City of Tigard, 512 U.S. 374, 385, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). The application of the doctrine to land-use situations evolved in the state courts over many years and was finally approved by the Supreme Court in Nollan v. California Coastal Commission, 483 U.S. 825, 839, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), and Dolan, 512 U.S. at 389, 114 S.Ct. 2309.
[3] The debate is sparked in part by Justice Scalia's dissent in Lambert v. City & County of San Francisco, 529 U.S. 1045, 120 S.Ct. 1549, 146 L.Ed.2d 360 (2000). Justice Scalia was dissenting to the Court's decision to deny certiorari. He speculated that the lower court could have based its decision on three theories. He dismissed the first two theories outright as implausible, but acknowledged that the third theory was "at least plausible." Speaking of a takings claim predicated on a rejected exaction, he said:

When there is uncontested evidence of a demand for money or other propertyand still assuming that denial of a permit because of failure to meet such a demand constitutes a takingit should be up to the permitting authority to establish either (1) that the demand met the requirements of Nollan and Dolan, or (2) that denial would have ensued even if the demand had been met....
... [T]he court's refusal to apply Nollan and Dolan might rest upon the distinction that it drew between the grant of a permit subject to an unlawful condition and the denial of a permit when an unlawful condition is not met.... From one standpoint, of course, such a distinction makes no sense. The object of the Court's holding in Nollan and Dolan was to protect against the State's cloaking within the permit process "`an out-and-out plan of extortion,'" Nollan, 483 U.S. at 837, 107 S.Ct. 3141, 97 L.Ed.2d 677 (quoting J.E.D. Associates, Inc. v. Atkinson, 121 N.H. 581, 584, 432 A.2d 12, 14-15 (1981)). There is no apparent reason why the phrasing of an extortionate demand as a condition precedent rather than as a condition subsequent should make a difference. It is undeniable, on the other hand, that the subject of any supposed taking in the present case is far from clear. Whereas in Nollan, there was arguably a completed taking of an easement (the homeowner had completed construction that had been conditioned upon conveyance of the easement), and in Dolan there was at least a threatened taking of an easement (if the landowner had gone ahead with her contemplated expansion plans the easement would have attached), in the present case there is neither a taking nor a threatened taking of any money. If petitioners go ahead with the conversion of their apartments, the city will not sue for $600,000 imposed as a condition of the conversion; it will sue to enjoin and punish a conversion that has been prohibited.
Lambert, 529 U.S. at 1047-48, 120 S.Ct. 1549 (Scalia, J., dissenting). We view Justice Scalia's comments as an acknowledgment that the distinction made by the District today is one that is fairly raised, but one without any logical significance.
[4] The policies underpinning exactions claims clearly support this conclusion. As Justice Scalia observed: "The object of the Court's holding in Nollan and Dolan was to protect against the State's cloaking within the permit process `an out-and-out plan of extortion.'" Lambert, 529 U.S. at 1048, 120 S.Ct. 1549 (Scalia, J., dissenting) (internal citations omitted). An attempt by government to extort is no less reprehensible than a fait accompli. Nollan and Dolan are also grounded in a skepticism that there exists a correlation between the imposition of improper exactions and over regulation of property. See Nollan, 483 U.S. at 837 n. 5, 107 S.Ct. 3141 ("a regime in which this kind of leveraging of the police power is allowed would produce stringent land-use regulation which the State then waives to accomplish other purposes."). Even an attempt to exact improper concessions supports an inference that the affected property owner's land is over regulated.

Certainly, as the dissent suggests, Mr. Koontz could have completed the off-site work and sued for the cost, which, in hindsight, would have mitigated the amount of assessed damages. However, this does not justify a rule of law that forces an aggrieved property owner to accede to unconstitutional conditions to preserve his right to challenge the abusive practice. Furthermore, such a rule would be completely unworkable when applied to a case where the improper exaction involves a condition that materially alters the design, density or economic feasibility of the project.
The dissent justifies its conclusion by its unexplained prognosis that: "No agency in its right mind will wade into this swamp." Although this might support an argument that Nollan and Dolan were wrongly decided, it offers no support for the dissent's conclusion that some Nollan/Dolan claims may proceed while others may not, depending on how the property owner reacts to the offer. If the dissent is right, it is not because a contrary ruling will rein havoc on the ability of governments to do business.
[5] We have not overlooked the observation by the dissent that the trial court did not address the legality of the alternative offer to permit a one-acre development, a point not raised by the District. Even if this issue is properly before us, we think the court implicitly rejected this contention. In other words, the trial court decided as fact that the conservation easement offered by Mr. Koontz was enough and that any more would exceed the rough proportionality threshold, whether in the form of off-site mitigation or a greater easement dedication for conservation.
[1] Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).
[2] Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).
[3] As Professor Cordes correctly points out, at their worst, the system of exactions has been a means by which governments can use their monopoly power to extort from developers property interests often unrelated to the proposed development. Cordes, supra at 513-14.
[1] Calvert Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033, 1055 (1936).
[2] Elizabeth Johnson was the supervising regulatory scientist for the District that reviewed the original permit application in 1994 and performed an onsite assessment. She testified that the amount of mitigation required, based on "the quality of the habitat and the species that would likely utilize that type of habitat," was a preservation mitigation ratio that was well within the mitigation formula in use by the District at that time.
[3] The trial court said:

Although the St. Johns District has argued otherwise, this court reads that language and the DCA opinion as mandating a trial on the issue of whether there has been a taking. The opinion does not make it clear precisely what legal theory of "taking" the DCA had in mind in its remand. The phrase "all that he could do and still retain an economic use of his property" is read by the District's attorney as saying the DCA perceived the issue on taking as whether the St. Johns District's conditions denied Mr. Koontz all or substantially all of the economically viable uses of his property. If so, one must wonder why the case was reversed and remanded. In that reading there is no issue to be tried since Mr. Koontz does not contend he has lost all or substantially all economically viable use of his property by reason of the conditions he has challenged.
The DCA opinion must be read in its entirety, and the footnotes are important parts of the opinion. In trying to follow the mandate this court has read the opinion many times and listened to and read lengthy arguments about it. To accept the interpretation of the opinion by Mr. Koontz' counsel seems the more prudent choice. Therefore, the case was tried on whether the off-site mitigation required by the District was an unreasonable exercise of police power.
The DCA opinion is consistent with reading the Nollan and Dolan cases as providing constitutional tests applicable to the Koontz property.
[4] The District urged that Mr. Koontz had suffered no damage at all because his property had more than tripled in value during the eleven years.
[5] See Town of Flower Mound, 135 S.W.3d at 630.
[6] See § 373.617(2), Fla. Stat. (1993).
[7] Dolan, 512 U.S. at 389, 114 S.Ct. 2309.
[1] Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).
[2] Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994).